(Decided 2nd December, 1892.)

---

CHARLES W. HAACKE *vs.* THE KNIGHTS OF LIBERTY SOCIAL AND LITERARY CLUB.

*Sunday law—Money collected on Sunday—Promise to Pay money Received on Sunday—Assumpsit—Violations of Charter of Corporation.*

The defendant was a member and the treasurer of a social and literary club, and as such treasurer he received from time to time, on Sundays, and on week days, money belonging to the club. He made a statement in writing of the moneys so received, and of the sums expended by him, showing a balance in his hands due the club, and this balance, after first refusing, he subsequently promised, to pay. In an action of *assumpsit* on the

common counts brought by the club to recover this balance, he made defence upon the grounds that the money, was the result of work done or sales made, on Sunday in violation of the Sunday law; that such work or business was illegal and *ultra vires;* that the charter of the plaintiff was fraudulently obtained, and that the election of its officers was illegal. HELD:

1st. That assuming that the funds of the club came into the hands of its officer, the defendant, as the result of business done in violation of the Sunday law, and of the charter of the plaintiff, the defendant should not be allowed to escape liability on any such pretexts.

2nd. That the defendant, being a member of the club, and having participated in the violations of law and the infringements of the charter relied on by him as a defence, neither the alleged fraud of the plaintiff in obtaining its charter, the illegal election of its officers, nor the alleged violations of its charter by the plaintiff constituted a valid defence under the circumstances of the case.

3rd. That even if the original transaction or contract by which the defendant obtained the money in question were in violation of the Sunday law and the charter of the plaintiff, yet the promise made by the defendant on a week day to pay said money to the plaintiff, in connection with the other evidence in the cause, was sufficient to support the action, and entitle the plaintiff to recover.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the four following prayers:

1. That if the jury believe from the evidence that the defendant had money in his hands belonging to the plaintiff, and on Thursday, the 30th of October, 1891, rendered the account offered in evidence to the plaintiff, whereby it appears that the sum of $167.44 in his hands was money belonging to the plaintiff, and the defendant then and there, and on other days (not being Sun-

days) promised to pay and deliver said amount of money to the plaintiff, then the plaintiff is entitled to recover the said sum of $167.44, and interest thereon in the discretion of the jury.

2. If the jury believe from the evidence that the defendant for safe-keeping received money belonging to the plaintiff, and that a part of said money was illegally collected and delivered to him on Sundays, and that thereafter on week days the defendant admitted to the plaintiff that he had money in his possession belonging to the plaintiff, and on a week day rendered the account offered in evidence showing a balance in his hands of $167.44 belonging to and the property of the plaintiff, and that thereafter the plaintiff by writing delivered to the defendant on the 22nd day of January, 1891, duly requested the defendant to pay and deliver said money and all other property in his hands belonging to the plaintiff to the duly authorized agents of the plaintiff, and the defendant neglected and refused to do so, and still remains in possession of said money and all other property belonging to the plaintiff, then the plaintiff is entitled to recover said money and the jury in their discretion may allow interest on the said amount from said 22nd day of January, 1891.

3. If the jury believe from the evidence that the defendant was entrusted with the safe-keeping of money belonging to the plaintiff, and that part of said money was delivered to him on Sundays, and the defendant thereafter on a week day admitted the sum of $167.44 to be in his hands belonging to the plaintiff, and promised to apply the same in payment of the rent for the premises mentioned in and under the contract of lease offered in evidence, but neglected and failed to apply said money in payment of said rent, then the jury must find for the plaintiff for said amount of money in the hands of the defendant, and in their discretion may allow inte-

rest thereon from the time the defendant failed to pay the same as promised by him.

4. If the jury believe from the evidence in the cause that, the defendant was the alleged treasurer of the plaintiff and as such received an amount of money of not less than $200, money belonging to the plaintiff from a certain Hoffmeister, his alleged predecessor in office, and the sum of $91.30, proceeds from a ball held by the plaintiff on a week day, and the initiation fees of $2 from each member, and the annual dues of $1 from each member, collected on week days, and has failed to deliver said money to the plaintiff after he ceased to hold said alleged office as treasurer, when duly requested to do so, and has failed to account for the same to the plaintiff, then the plaintiff is entitled to recover from the defendant such sum of money as the jury may find to be still in the possession of the defendant of said moneys so received by him and not expended for the use or by the authority of the plaintiff, and the jury in their discretion may allow interest on said amount of money, if they find any so to be in the hands of the defendant, from the 22nd day of January, 1891, the day when the request in writing, offered in evidence, was served on the defendant, if they believe such request was actually served on the defendant.

The defendant offered the ten following prayers:

1. That if the jury find from the evidence that the plaintiff filed a certificate of incorporation in the record office of the Superior Court of Baltimore City, by which they asked for authority to organize as a "Social and Literary Club" in the City of Baltimore, and in the said certificate, the said Social and Literary Club limited their place of business to Baltimore City, then they could not transact the business of the club in any other place than Baltimore City, and such business as was transacted at any other place was illegal and void.  And

if the jury find that an election of the officers of the club was held in Baltimore County on the banks of the Middle river, on a Sunday, to wit: the first Sunday of November, A. D. 1890, and also on the first Sunday of November, A. D. 1891, that the said elections were void, as in violation of the charter of the club.

2. That the verdict of the jury must be for the defendant because there is no legally sufficient evidence that any money he has in hand, if the jury find that he has money, came into his hands from the revenue of a social and literary club, and that the drinking of lager beer, and the rolling of ten-pins for pay, is not what is meant by "social and literary."

3. If the jury find that the "Knights of Liberty of Baltimore City" intended, when they obtained the certificate of incorporation exhibited in evidence in this case, to set up and conduct a place or places for drinking, dancing and rolling ten-pins, and especially for the purpose of such indulgences and games on a Sunday, then the said certificate was fraudulently obtained, and affords no protection for doing, nor confers any right to do, the enumerated acts, and it is unavailing as a foundation for an action in this case, and the verdict must be for the defendant.

4. That "Social and Literary" in the certificate of incorporation offered in evidence, means associating together for literary purposes, and any other thing is not within the powers conferred by the said certificate, and if the jury find that the money claimed by the plaintiff was not the result of a social and literary club within the meaning above set forth, then the plaintiff cannot recover.

5. If the jury find from the evidence that the defendant received money which is claimed by the plaintiff, and that the plaintiff had no right or power to take the said money under and by virtue of any rights conferred on

it by the certificate of incorporation offered in evidence,. and that the defendant did not at any time promise to pay the said money to the plaintiff, even though the jury find that it was incorporated as a social and literary club within the City of Baltimore, then their verdict. must be for the defendant.

6. If the jury find from the evidence that "the Knights. of Liberty of Baltimore City" is a body corporate, as a social and literary club, and that it leased from James Gilmore the grounds known as Indian Grove, to give entertainments to members of the club, and such others. as might attend, which entertainments consisted of selling lager beer, selling cigars and rolling ten-pins, and that these entertainments were given on Sundays; that the lager beer was paid for by the parties—members of the club and others—who visited the grounds, by money collected at the entrance to the grounds, which was termed an admission fee, but which was meant to be and was in fact, payment for the beer that the party paying the fee was entitled to demand, because he paid the admission fee; and that the beer, cigars and ten-pin alley were sold and kept for the purpose of making profit, and that the money in question in this case was collected from these sources; and that such doings and actings. were in violation of the laws of the land, then the said club cannot recover in this case, even though the jury find that the defendant promised to pay the money— $167—to the plaintiff.

7. That money collected from visitors to the grounds. leased from J. Gilmore for tickets of admission to the grounds, and which entitled the holder to demand lager beer at the bar, for cigars sold at the ten-pin alley, and for the privilege of rolling ten-pins on Sunday, was not collected in pursuance of the charter-rights of the plaintiff, if the jury under the instruction of the Court find that it is a body corporate, and that the money so col-

lected is not due to said body corporate as such; and their verdict must be for the defendant.

8. If the jury find that the operations and transactions of the plaintiff (if they find that it has legal existence in Baltimore County) were carried on and transacted on Sunday, then they were done and carried on in violation of law, and cannot form the grounds of a suit at law.

9. If the jury find under the instructions of the Court that the plaintiff has legal existence as a social and literary club in Baltimore City, then the defendant asks an instruction that elections held in Baltimore County, where the annual meetings were held were illegal, both on account of the place where they were held and of the day—Sunday—on which they were held, and the officers claiming to be so elected are not entitled to the office.

10. If the jury find that the plaintiff club, provided they find under the instructions of the Court there is such a club—consists of sixty members, and that it proceeded at its annual meeting in 1890 to elect officers for the succeeding year when there was not a majority of all the members present, and that the treasurer, who pretends to have been elected at the said meeting, is the claimant of the money in question from the defendant, is not an officer of the said club, and his election was void, there is no person to whom the defendant could legally pay money on behalf of the said club, even if he admitted that he had money in his hands to which the club had a right.

The Court (PHELPS, J.,) granted the prayers of the plaintiff, and rejected those offered by the defendant. The defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued for the appellee before ALVEY, C. J., BRYAN, FOWLER, ROBERTS, McSHERRY, and BRISCOE, J., and submitted for the appellant.

*William H. Cowan*, for the appellant.

*L. P. Hennighausen*, for the appellee.

A contract made on Sunday is void, but may be confirmed or ratified on any other day, or a new contract may be entered into by the parties, relating to the same subject-matter. *Winchell vs. Carey*, 115 *Mass.*, 560; *Williams vs. Paul*, 6 *Bing.*, 653; *Adams vs. Gay*, 19 *Vt.*, 358; *Sumner vs. Jones*, 24 *Vt.*, 317; *Tucker vs. Mowrey*, 12 *Mich.*, 378; *Harrison vs. Colton*, 31 *Iowa*, 16; *Perkins vs. Jones*, 26 *Ind.*, 499; 19 *Am. Law Reg.*, *N. S.*, 279.

The appellant recognized the officers of the appellee by accounting to them, naming a member of the examining committee, and entering into an agreement with them to apply said money in the payment of rent for the use and benefit of the plaintiff. He is estopped in this action from inquiring into the regularity of their election, and is further estopped from the inquiry whether the money entrusted to him was illegally collected by transactions not within the charter limits of the appellee. *United Germ. Bank, &c. vs. Katz*, 57 *Md.*, 128; *Bartlett & Robbins, Garns. vs. Wilbur*, 53 *Md.*, 498; *Franz vs. Teutonia Bldg. Asso.*, 24 *Md.*, 270; *Davis vs. West Saratoga Bldg. Union, No. 3*, 32 *Md.*, 293.

FOWLER, J., delivered the opinion of the Court.

The appellant was the treasurer of the appellee, which is a social and literary club of Baltimore City, incorporated under the general incorporation laws of this State. As such treasurer he received from time to time, on Sundays and week days, money belonging to the club.

He made a statement in writing of the moneys so received by him, and also of the amount expended by him, showing a balance in his hands due the club of something less than two hundred dollars. He refused, however, to pay this balance, claiming that he was responsi-

ble for certain rent due by the association. Subsequently he promised to pay the amount so admitted to be due, but failed to do so, and the appellee sued him *in assumpsit* on the common counts. A judgment was recovered for the amount claimed to be due, and the question presented arises upon exceptions taken by the defendant to the rejection of the prayers offered by him, and the granting of those of the plaintiff.

The propositions announced in the defendant's prayers are that, if the money in question was the result of work done or sales made on Sunday, in violation of our Sunday law, or if such work or business was illegal and *ultra vires*, or if the charter of the appellee was fraudulently obtained, or the election of its officers was illegal, then under none of these circumstances can the appellant recover.

The instructions granted at the instance of the plaintiff were to the effect that, if the defendant on any other day than Sunday promised to pay the money in question to the plaintiff, it was immaterial whether the defendant obtained possession of the money on Sunday or other days, or whether it was the result of work done or sales made on Sunday. Assuming that the funds of the club came into the hands of the officer, the appellant, contrary to law, and as the result of business done in violation of the Sunday law and of the charter of the appellee, we do not think the defendant should be allowed to escape liability in this case, upon any such pretexts. What the rights of the State may be in proceedings taken by it to forfeit the charter, or how far the appellee may be proceeded against for the alleged flagrant violations of law, are questions which cannot now be properly considered.

The appellant was a member of the appellee club, and, according to the theory on which his prayers are based, he participated in the violations of law and the

infringements of the charter he now relies on as a justification for refusing to pay it money which he admits was in fact the property of the appellee.

Neither the alleged fraud of the appellee in obtaining its charter, *Pattison vs: Albany Build. and Loan Association,* 63 *Ga.,* 373, the illegal election of its officers, *Mech. Nat. Bank of Newark vs. Burnet Mfg. Co.,* 32 *N. J. Eq.,* 236, nor the alleged violations of its charter by the appellee, *United German Bank, &c. vs. Katz,* 57 *Md.,* 128, constitute a valid defence for the appellant under the circumstances of this case.

In the case last mentioned we held that one who had a note discounted by the Bank in question in violation of its charter would not be allowed to rely upon the illegality of the act in order to escape the payment of the note. And it was there said such conduct of the corporation "might be good ground for proceeding to forfeit the charter * * * * but in a case like this it is not available as a defence."

The laws which the State has enacted to secure the due and orderly observance of Sunday, must, of course, be enforced, and so construed as to give them full effect, but not at the expense of all the rules of common honesty.

In some of the States (see Revised Statutes of Maine, chapter 82, section 16,) it is provided that "no person who receives a valuable consideration for a contract, express or implied, made on the Lord's day, shall defend any action upon such contract on the ground that it was so made, until he restores such consideration." The provisions of this statute are in accordance with the views of this Court in *United German Bank vs. Katz, supra,* namely, that it would be inequitable to allow one who has had the benefit of an illegal contract to plead that illegality, and at the same time to hold on to the benefit he derived therefrom.

Haacke *vs.* Knights of Liberty Soc. and Lit. Club.

It would seem, also, that the instructions given the jury are free from objection. As we have said, they are based upon the proposition that, even if the original transaction or contract by which the appellant obtained the money in question is in violation of the Sunday law and the charter of the appellee, yet that the promise made by the appellant on a week day to pay said money to the appellee, in connection with the other evidence in the cause, is sufficient to support this action, and entitle the appellee to recover. The suit here is not upon a contract made on Sunday, but it is an action of *assumpsit* on a special promise made by the appellant to the appellee on the 30th of October, 1891, and on other week days, to pay to it a sum of money, which, as matter of fact, he admits came into his hands as an officer of the appellee. Under the instructions of the Court below recovery was had upon this special promise, and not upon a contract or promise made on Sunday. In other words, the case of the appellee was complete when it offered in evidence its charter, proof of the account stated by the appellant, showing the balance in his hands, and that he had promised as above mentioned to pay the same. Evidence of the supposed illegal contract or illegal transactions must, therefore, have come, if at all, from the appellant, as matter of defence; but, as we have already said, he will not be allowed to set up any such defence in this case. He is estopped.

*Judgment affirmed, with costs.*

(Decided 2nd December, 1892.)