## BROOKS et al. v. J. R. WATKINS MEDICAL CO.

No. 9975—Opinion Filed March 29, 1921.

(Syllabus.)

### 1. Monopolies—Restraint of Trade—Validity of Contract.

A contract of absolute sale, made by a medical corporation of its various manufac-

tured preparations, in which the purchaser is to sell all goods purchased at regular retail prices to be fixed by the corporation, where its entire product is sold throughout the country only by means of like restrictive contracts, operates as a restraint of trade, unlawful as to interstate commerce under Act Cong. July 2, 1890, ch. 647, 26 Stat. 209 (U. S. Comp. St. 1916, sec. 8820 et seq.), upon the subject of trusts and restraints of interstate trade.

**2. Contracts — Construction — Ambiguity— Question for Court or Jury.**

In all cases of ambiguity, the substance of a contract should be considered, in order to ascertain the intention of the parties. And where the contract is ambiguous in any of its terms, and the ambiguity can be solved by reference to other parts of the contract, or surrounding circumstances which are uncontroverted by the evidence, it is the duty of the court to solve the ambiguity, and to declare the true meaning of the contract. But where the ambiguity cannot be solved by reference to other parts of the contract, and the surrounding circumstances are controverted, the court should charge the jury hypothetically as to the true interpretation of the contract.

**3. Appeal and Error—Time for Proceedings — Error in Sustaining Demurrer — Final Order.**

Where a demurrer is sustained to each paragraph of the answer, except the paragraph containing a general denial, and exceptions are saved to the ruling of the court, and incorporated in the motion for a new trial, and included in the writ of error, the error of the trial court in sustaining the demurrer is properly before this court for review, notwithstanding more than six months intervened between the date of the order sustaining the demurrer and filing a writ of error in this court.

**4. Appeal and Error—"Final Order."**

A final order is one ending the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to determine the rights of the parties.

Error from District Court, Love County; W. F. Freeman, Judge.

Action by the J. R. Watkins Medical Company against S. L. Brooks and others for purchase price of merchandise. Judgment for plaintiff for less than sued for, and both parties bring error. Reversed and remanded.

H. A. Stanley, for plaintiffs in error.

T. B. Wilkins, for defendant in error.

PITCHFORD, J. This action was commenced in the district court of Love county, Oklahoma, by the plaintiff against the defendants, seeking to recover judgment for the sum of $1,434.96, alleged to be due the plaintiff for certain goods sold to the defendant S. L. Brooks under and by virtue of contract dated December 1, 1914. The defendants Freeman and Grisham were sureties for Brooks.

The contract provided that the plaintiff was to furnish, free on board of cars, at Winona, Minn., any and all medicines, etc., manufactured or sold, or which might thereafter be manufactured or sold by it, at the usual and customary wholesale prices, as the defendant Brooks might reasonably require for sale by him from time to time, from date of the agreement until the first day of March, 1916, in certain described territory, in Love county, Oklahoma.

The defendant Brooks was to make a thorough and personal canvass of said territory at least three times a year, at his own cost and expense, and to provide a good team and proper wagon and outfit therefor, and to sell said medicines. etc., or so much thereof as possible, and at all times during said term of agreement he was to keep a complete record of all goods disposed of by him and on hand, and to make to the plaintiff complete regular weekly written reports of all sales and collections. He was to pay the plaintiff, at Winona, Minn., the wholesale prices aforesaid for the medicines, etc., and to prepay the freight and express charged thereon in the manner and in accordance with the provisions of the weekly report blanks to be furnished by the plaintiff.

The contract further provided that no printing, advertising, or other matter of said company, sent to or distributed by the defendant, should be construed to modify or change the terms of the agreement; that the agreement, as signed, should be complete, entire, and the only agreement between the parties, and that the same should not be varied, changed, or modified in any respect, unless in writing, executed by the parties thereto.

It is further stipulated that, at the date of agreement, there was due the plaintiff from the defendant Brooks, for goods sold and delivered to him under a prior agreement of December, 1911; the sum of $1,368.15, which sum the defendant promised and agreed to pay during the term of the agreement, the payment of which was thereby extended.

The defendants filed the following second amended answer:

"First. That they deny each and every material allegation contained in plaintiff's petition and exhibits thereto, except those hereinafter specifically admitted to be true.

"Second. Defendants, further answering, admit the execution of the contract sued upon herein and agree that the claimed indebtedness of $1,368.15 arose by virtue and under prior agreements and say that said prior agreements were made and covered a period of time from about December First, 1911, until the date shown in the contract sued upon herein, that said contracts provided for the sale of plaintiff's goods, wares, and merchandise manufactured and sold by it and was for a restricted and specified territory, the same as described in the contract sued upon herein. That said contracts contained the further provisions that defendant S. L. Brooks should devote his whole time to the sale of plaintiff's goods and to sell no other goods and to sell goods at the regular retail prices indicated by plaintiff in said restricted territory and to make weekly reports of his business upon blanks furnished by plaintiff and at the regular retail prices indicated by plaintiff in said weekly report blanks. That plaintiff did furnish to defendant Brooks said weekly report blanks which specified and set out the retail prices of plaintiff's goods so sold by said Brooks and the defendant Brooks did make weekly reports of his business and of plaintiff's goods sold during said time and on said blanks so furnished by plaintiff therein. That said defendant Brooks sold said goods, wares, and merchandise in said mentioned restricted territory, the same territory as described in the contract sued upon herein, and at the prices indicated by plaintiff, which said prices of goods were plainly stamped and printed thereon by plaintiff and over its signature, and which said prices the defendant Brooks was compelled by plaintiff to use in selling to the retail trade and in making his reports to the plaintiff.

"Third. The defendants further say that plaintiff's business is conducted in the way and manner as set out in the preceding paragraph of this amended answer; that plaintiff will sell to only one person or agent in each separate specified and restricted territory and that plaintiff has each state divided into districts for the purpose of doing business and selling its goods, and that it allows only one person in each district to sell its goods, and that by virtue of plaintiff's way of doing business, the conditions in the contracts and requirements made of the agents, the plaintiff dictates and sets the retail prices of its goods, wares, and merchandise sold by it. and thus competition is eliminated and prices artificially maintained throughout the various states of the Union, including Oklahoma. That the plaintiff has conducted its business during all of said time in which the indebtedness of $1,434.98 was accumulated by means of like restrictive contracts as to the one sued upon herein and by dictating and compelling and fixing the retail prices at which its goods should be sold in each district and throughout the various states of the United States. Therefore, the defendants say that the contract sued upon herein is void and unenforceable; that said contract and plaintiff's manner of doing business and maintaining prices is in violation of the plain provisions of the acts of Congress defining and regulating commerce between the states.

"Fourth. Said defendants, for a fourth and further defense, allege and say that they admit that plaintiff is a foreign corporation duly created, organized, and existing under and by virtue of the laws of the state of Minnesota, and alleges and says that said plaintiff has been doing business in the state of Oklahoma since long prior to the first day of December, 1911, and that said plaintiff has never filed in the office of the Secretary of State of the state of Oklahoma a certified copy of its charter or articles of incorporation, and said plaintiff has never appointed an agent residing at the capital of the state of Oklahoma, upon whom the service of process may be had, that said plaintiff is doing business for profit and is not a charitable or religious corporation, and therefore has no right to maintain this action in the courts of the state of Oklahoma."

Plaintiff demurred to the second, third, and fourth paragraphs of the amended answer, which demurrer was sustained, and the defendants excepted to the ruling of the court and elected to stand upon their answer. The jury returned a verdict in favor of the plaintiff for the sum of $748.93, from which judgment both plaintiff and defendants appeal.

The main ground presented and argued by the defendants for a reversal of the judgment is the action of the court in sustaining the demurrer, and in refusing to give the following instruction:

"You are instructed, gentlemen of the jury, that evidence in this case has been offered and admitted for your consideration tending to prove that the retail prices of the goods sold by the defendant Brooks were fixed and controlled by the plaintiff in the case. If you believe that from a fair preponderance of the testimony offered that the plaintiff herein, after making an absolute sale of its goods to defendant Brooks, fixed and controlled the prices at which said goods were sold to the retail trade, then it will be your duty to find for the defendants."

There was no error in refusing this instruction if the trial court was correct in sustaining the demurrer.

The contract sued upon shows that the defendant Brooks was given certain territory in which to sell goods furnished by the plaintiff. He was required to make a thorough and personal canvass of the territory at least three times a year, also to furnish the team and proper wagon and outfit, and to sell all the goods possible. He was to keep a complete record of all goods sold, to make a

complete, regular weekly report of all sales upon blanks to be furnished by plaintiff. The weekly report blanks had printed thereon the retail prices of medicines. Besides the weekly report blanks, the plaintiff also furnished the defendant with a book to keep his daily sales in, and further required him to make an annual inventory upon blanks furnished by the company.

The defendant Brooks testified as follows:

"Q. Mr. Brooks, I see this provides that you should keep a report of the sales of the goods that you made to customers; did you do that? A. Yes, sir. Q. How did you keep the reports? A. Kept them on a book they furnished me. Q. Who furnished you the book? A. The Medicine Company. Q. Is this one of the books that you speak of? A. Yes, sir. Q. Who furnished you that book? A. The Watkins Medical Company. Q. I see this book, Mr. Brooks, the different articles you sold has the price annexed thereto; is that the price at which you sold the goods? A. Yes, sir. Q. I see in the weekly reports that the price is also included there; is that the price the goods were sold? A. Yes, sir. Q. Are the prices in the weekly reports the same as in the book furnished you? A. Yes, sir."

The defendant Brooks further testified as follows:

"Q. Mr. Brooks, state to the court and jury how you arrived at the price that you sold these goods at? A. The price of all articles is on the sales book and the price is on the weekly report blank. Q. This sales book and weekly report blank furnished you by the company? A. Yes, sir. Q. You were required to make this weekly report to the company? A. Yes, sir; and also it was on the label of the goods, a good deal of them."

The balance due plaintiff company for goods sold defendant, under the agreement of December, 1911, was $1,368.15. The agreement of 1911 was practically the same as the present contract, with this exception: In the agreement of 1911, the defendant Brooks was required to devote the whole of his time and attention to making a diligent and continuous canvass of said territory, and to visit every farm house therein at least three times a year at his own expense.

In the case of Stewart v. W. T. Rawleigh Medical Co., 58 Okla. 344, 159 Pac. 1187, the plaintiff had instituted an action against the defendants under a contract the pertinent part of which is as follows:

"Whereas Henry Minette, of Pauls Valley, Oklahoma, desires to purchase of the W. T. Rawleigh Medical Company, of Freeport, Illinois, on credit and at wholesale prices, to sell again to consumers, medicines, extracts, spices, soaps, stock food, and other goods manufactured and put up by it, paying his account for such goods in installments as hereinafter provided: Therefore he hereby agrees to sell no other goods than those sold him by said company, to sell all such goods at regular retail prices to be indicated by it, and to have no other business or employment."

The main defense in that case was that the contract was void, in that the same was made for the sole purpose of maintaining a monopoly in the articles sold by the W. T. Rawleigh Medical Company; and that the provisions of the contract made by the W. T. Rawleigh Medical Company, and all other contracts made by said company throughout the different states of the Union, other than the state of its domicile, constituted an unreasonable restraint upon trade and interstate commerce. Under the issues as joined by the pleadings, the defendants assumed the burden of proof, and having introduced their evidence and rested their case, the plaintiff demurred thereto, and, the amount in controversy not being disputed, the court instructed the jury to return a verdict in favor of the plaintiff, which was done.

In the trial of the cited case, it was agreed that the contracts made by the plaintiff in the sale of its goods to other customers were identical with the Minette contract, and its products were sold by means of such contracts. We quote from the body of the opinion as follows:

"The general rule is well settled that a system of contracts between manufacturers, jobbers, and retailers, by which the manufacturers attempt to control the prices for all sales by all dealers, at wholesale or retail, whether purchasers or subpurchasers, eliminating all competition, and fixing the amount which the consumer shall pay, amounts to restraint of trade, and is invalid both at common law, and, so far as it affects interstate commerce, under the Sherman Anti-Trust Act. United States v. Kellogg Toasted Corn Flake Co. (D. C.) 222 Fed. 725, Ann. Cas. 1916A, 78."

In Hunt et al. v. W. T. Rawleigh Medical Co., 71 Oklahoma, 176 Pac. 410, the second paragraph of the syllabus is as follows:

"A contract of absolute sale, made by a manufacturer, of its various manufactured preparations, in which the purchaser agrees to sell all goods purchased 'at regular retail prices to be indicated by it' (the manufacturer), where its entire product is sold throughout the country only by means of like restrictive contracts, operates as a 'restraint of trade,' unlawful as to interstate commerce under Act Cong. July 2, 1890, ch. 647. 26 Stat. 209 (U. S. Comp. St. 1916, section 8820 et seq.), upon the subject of trusts and restraints of interstate trade."

Section 1 of the act of Congress of July 2, 1890, 26 Stat. 209, ch. 647 (U. S. Comp. Stat. 1901, p. 3200), declares illegal every contract,

combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several states, or with foreign nations, and also declares it to be a misdemeanor, punishable by fine or imprisonment, or both, for anyone to make any such contract, or to engage in any such combination or conspiracy. By section 2 of the same act, it is also made a misdemeanor, punishable by fine or imprisonment, or both, for anyone to monopolize, or attempt to monopolize, or combine or conspire with any other person or persons to monopolize, any part of the trade or commerce among the several states or with foreign nations.

The answer charges that the effect of the contract, or agreement, made with the plaintiff was the same as in the case quoted from above. If the purpose of the plaintiff was to control the retail price of the goods sold to the defendant Brooks, then in that event the contract would be illegal. It is true the agreement in the instant case stipulates that no terms of the contract should be changed unless in writing and signed by the parties. The contention of the plaintiff is that the contract is absolute in its terms and complete within itself. It is further stipulated in the contract that no advertising matter furnished the defendant Brooks should be construed as in any way changing the terms thereof. What was the intention of the plaintiff in wording the contract as it did? If the sale to Brooks was absolute and complete, why require the report upon blanks furnished by the company in which the retail price of every article was indicated? It appears that the goods were sold by retail exactly at the price indicated on the blanks furnished by the company.

Paul Watkins, the general manager of the plaintiff, testified that he made between 1,500 and 2,000 contracts with other salesmen throughout the United States similar to the contract sued on. While the plaintiff contends that there is nothing in the agreement forcing the defendant to sell at the price indicated by the blanks, still the company reserves the right to terminate the agreement at any time.

What did the defendant Brooks understand the contract to mean? Did he understand that if he reported he was selling the goods at a price less than that shown by the blanks, the plaintiff would terminate the contract? To this extent the agreement is ambiguous, and in all cases of ambiguity the substance of the contract should be considered, in order to ascertain the intention of the parties. And where the contract is ambiguous in any of its terms, and the ambiguity can be solved by reference to other parts of the contract, or surrounding circumstances which are uncontroverted by the evidence, it is the duty of the court to solve the ambiguity, and to declare the true meaning of the contract. But where the ambiguity cannot be solved by reference to other parts of the contract, and the surrounding circumstances are controverted, the court should charge the jury hypothetically as the true interpretation. Elliott on Contracts, vol. 2, 857.

In Ginnuth et al. v. Blankenship & Blake Co. et al. (Tex. Civ. App.) 28 S. W. 828, the court said:

"The contract sued upon as the basis of appellants' action, in that part of it that provides that Ginnuth is to receive one-fifth interest in all subscriptions received, etc., 'excepting those subscribers taking stock in the Blake Mfg. Co.,' is so near the border line of uncertainty and ambiguity that it is doubtful what is meant by the expression, 'subscribers taking stock' in the manufacturing company. The court below construed the contract in this respect, and in its charge to the jury gave it a certain meaning, which action of the court is made the basis of an assignment of error, upon the ground that the court should have left the construction of the contract in this respect to the jury. We have had difficulty in arriving at the meaning of the expression above quoted, and conclude that the contract in this respect is doubtful in meaning, and the jury should have determined it from all of the facts and circumstances connected with its execution."

To the same effect, see Philadelphia to Use v. George W. Stewart, Appellant, 201 Pa. St. Rep. 526; Thorn & Hunkins Lime & Cement Co., Respondent, v. St. Louis Expanded Metal Fire Proofing Co., Appellant, 77 Mo. App. 21; Frank L. Wilcox, Respondent, v. Adolph Baer et al., Appellants, 85 Mo. App. 587.

It is well settled that one cannot do by indirection that which cannot lawfully be done directly. It was for the jury, under proper instructions, taking the whole contract together, to say what was the intention of the parties, and should they have believed that the contract entered into was for the purpose of evading the provisions of the Sherman Act, supra, and thereby fixing the retail price of the goods at which Brooks was to sell, then it would have been their duty to return a verdict in favor of the defendants.

The plaintiff says that, the defendants having acknowledged the indebtedness of $1,368.15, under the contract of 1911, and having agreed to pay the same, they cannot now complain of any illegality in that contract. To this proposition we cannot agree.

As was said in Hunt et al. v. W. T. Rawleigh Medical Co., supra:

"No court should lend its aid to a litigant who founds his cause of action upon an immoral or illegal act. If, from the plaintiff's own statement or otherwise the cause of action appears to arise ex turpi causa, or the transgression of a positive law of the country, state or federal, there the court should say he has no right to be assisted. It is upon that ground the court goes; not for the sake of the defendant, but because it will not lend its aid to such a plaintiff. It would be a travesty upon the law for the courts to lend their jurisdiction in the enforcement of the law to litigants whose contracts are in violation of law; likewise, in such cases, for the courts to be controlled in the exercise of their power in a given case to the particular state of the pleadings. Other considerations must determine the court's duty than mere points scored evidencing the ability of the pleader, when it is made to appear that an effort is being put forth to use the courts as an instrumentality for the enforcement of a void contract."

Plaintiff further contends that the defendants cannot complain of error in sustaining the demurrers to the several answers, contending that by filing amended answer, and not appealing within six months thereafter, the error, if any, was waived, and cites the case of Cates v. Miles et al., 67 Oklahoma, 169 Pac. 888, where it is said:

"Where a demurrer to a petition is sustained, and the plaintiff is granted time in which to amend, the error, if any, in sustaining said demurrer is waived, and cannot be assigned as error; and the judgment of the court dismissing the plaintiff's cause of action, where he fails to file an amended pleading under the state of the case above given, is proper."

When the court sustained the demurrer to the second amended answer, the order was not final. The general denial remained.

Section 5237, Rev. Laws 1910, defines a similar order as follows:

"An order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment, and an order affecting a substantial right, made in a special proceeding, or upon a summary application in an action after judgment, is a final order, which may be vacated, modified, or reversed, as provided in this article."

In Oklahoma City Land & Development Co. et al. v. Patterson et al., 73 Oklahoma, 175 Pac. 934, the second paragraph of the syllabus is as follows:

"A 'final order' is one ending the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to determine the rights of the parties."

To the same effect, see Garretson et al. v. Meeker et al., 76 Okla. 316, 185 Pac. 446.

In the instant case, the defendants filed their original answer on December 2, 1916. The demurrer was sustained on December 15, 1916. The amended answer was filed on January 30, 1917, and the judgment sustaining the demurrer to the amended answer was on March 5, 1917. Second amended answer was filed March 17, 1917, and the judgment of the court sustaining the demurrer to the second amended answer on March 26, 1917, at which time defendants refused to plead further and stood upon their second amended answer. The trial of the cause was heard at the November, 1917, term of court. The verdict was returned by the jury November 20, 1917, judgment being rendered thereon by the court the 30th day of November, 1917. It will be observed from the foregoing statement that the point involved in the case of Cates v. Miles et al., supra, is not in this case. When the demurrer was sustained to the second amended answer, the defendants excepted, and stood on their answer. The motion for new trial was filed in due time, and this exception was properly saved in the motion and properly before this court.

We conclude that the trial court erred in sustaining the demurrer to paragraphs two and three of the second amended answer. The judgment of the lower court is, therefore, reversed, and cause remanded for further proceedings not inconsistent with the views herein expressed.

HARRISON, C. J., and McNEILL, ELTING, and NICHOLSON, JJ., concur.