# R. LYLE SCHILL *v.* REMINGTON-PUTNAM BOOK COMPANY

[No. 11, January Term, 1943.]

*Decided April 8, 1943.*

*Reargument denied, memorandum filed June 2, 1943.*

The cause was argued before SLOAN, C. J., DELA-PLAINE, COLLINS, MARBURY, GRASON, and MELVIN, JJ.

*Herbert M. Brune, Jr.,* with whom were *Brune & Gordon* on the brief, for the appellant.

*Michael F. Delea,* with whom was *James M. Hoffa* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

The Remington-Putnam Book Company, on February 8, 1940, filed in Circuit Court No. 2 of Baltimore City a bill of complaint against the appellant here, Schill's Book Shop, alleging, in effect, among other things, that it had entered into a Fair Trade Contract under the Acts of 1937, Chapter 239, and Acts of 1930, Chapter 248, known as the "Fair Trade Act," with Simon & Schuster, Inc., a book publisher, and filed therewith the

publisher's price list showing the books protected under the contract. The bill further alleged that the appellant knew at all times of the Fair Trade Contract between the appellee and Simon & Schuster, Inc., and in spite of such knowledge and the fact that he had been repeatedly requested to desist from the violation of the contract previously entered into between Remington-Putnam Book Company and Simon & Schuster, Inc., that Schill had repeatedly violated the terms of said contract and the price list by selling books on the protected price list at a discount. Remington-Putnam Book Company asked for an injunction against the defendant, Schill, enjoining and restraining him from violating the terms of said contract. Schill filed a demurrer and answer which demurrer was overruled by the chancellor and an appeal was taken to this court. In an opinion reported in 179 Md. 83, 17 A. 2d 175, 22 A. 2d 128, this court held: (1) That copyrighted books are within the purview of the Maryland Fair Trade Act, (2) that the price of the book in question was sufficiently definite, and (3) that the exemption in the contract did not render it unenforceable.

After the appeal, Schill twice amended his answer, the last amendment being the same as that originally filed except that he added forty sections thereto, numbered D-1 to D-40. As well summarized by the chancellor, the amended answer alleges in part and in substance as follows:

"That the contract between Simon & Schuster, Inc., and plaintiff, which is the basis of the present suit, is part of an organized attempt by an illegal combination of publishers, acting in concert, to monopolize and control the entire system of book distribution in Maryland and elsewhere. That early in 1937 these publishers entered into a conspiracy in violation of the Sherman Anti-Trust Law, 15 U. S. C. A., Secs. 1-7, 15 note, which continues to the present time, to fix and maintain prices for new books throughout the United States. The country's leading booksellers, including plaintiff, were asso-

ciated in the conspiracy. The conspirators caused identical contracts to be executed by each publisher with a cooperating bookseller in each State, which, like Maryland, had enacted a Fair Trade Act, for the purpose of raising and fixing retail prices on substantially all books published by the conspiring publishers; that the contract involved in this case is one executed in furtherance of said conspiracy as an integral part thereof.

"The conspirators, both publishers and sellers, collaborated in producing a form of contract similar to that filed as an exhibit with the bill herein, and agreed to use and further the use of this form. From the spring of 1937 practically all current trade books were price fixed in New York under agreements requiring retailers to observe fixed prices, excepting sales by book clubs to their members. A rigid price structure was thus set up in the State of New York by joint action of the conspirators. The Tydings-Miller amendment to the Sherman Act was enacted, 15 U. S. C. A., Sec. 1, and in the fall of 1937 the conspirators proceeded to extend the New York conspiracy to forty-one other States, including Maryland. At this time, if not before, plaintiff entered directly into the conspiracy and ratified, confirmed and adopted the previous activities of the conspirators of which it was at all times fully informed. By the end of 1937 practically all current trade books were price fixed under a standard form of agreement, requiring retailers to observe fixed prices. The effect was to set up a rigid and uniform scale of prices for all trade books of different publishers sold in interstate commerce, all in accordance with the joint intention of the conspirators. By the end of December, 1937, plaintiff had solicited and obtained price fixing contracts from all the leading publishers, pursuant to the conspiracy. A joint enforcement committee of publishers and booksellers was set up, retaining common counsel and soliciting and collecting funds from publishers and booksellers for a joint enforcement effort. Through this committee and its counsel, at the instance

of plaintiff, defendant was repeatedly harassed and the present and other suits were instituted by plaintiff in pursuance of the combination and conspiracy. Plaintiff contributed to a fund raised by numerous publishers and booksellers to prosecute legal proceedings against R. H. Macy & Co., Inc., of New York City, in furtherance of the purposes of the conspiracy."

After argument and reargument, the chancellor below sustained the demurrer to the answer. The following stipulation was entered into by counsel:

"It is hereby stipulated and agreed by and between counsel for Complainant and Respondent, for purposes of trial of this case, that the facts stated in the Bill of Complaint are true and correct; provided that, as to the Respondent's knowledge of the contract referred to in Paragraph Fifth (Complainant's Exhibit No. 1) at and prior to the sale referred to in Paragraph Seventh, Respondent merely waives proof thereof, to the end that the Court may enter a decree with like effect as if the same were fully established by proof.

"And it is further stipulated and agreed by and between counsel for Complainant and Respondent, in order to save time at the trial of this case, that Respondent is prepared to proffer certain testimony in support of the affirmative defenses raised in his Second Amended Answer, but in view of the Order of Court sustaining Complainant's demurrer to said affirmative defenses, a formal proffer of such testimony is dispensed with; and the absence of such formal proffer shall not be construed as a waiver or relinquishment of the right to assert said defenses by appeal from the decision of this Court."

A decree was then passed by the chancellor on the eleventh day of June, 1942, ordering that the injunction as prayed be issued. An appeal is taken to this court from that decree by R. Lyle Schill, trading as Schill's Book Shop, appellant, against the Remington-Putnam Book Company, a body corporate, appellee.

The part of the Sherman Act, as amended, 15 U. S. C. A., Sec. 1, which is allegedly violated, is as follows:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal: Provided, That nothing herein contained in Sections 1-7 of this title shall render illegal, contracts or agreements prescribing minimum prices for the resale of a commodity which bears, or the label or container of which bears, the trade mark, brand, or name of the producer or distributor of such commodity and which is in free and open competition with commodities of the same general class produced or distributed by others, when contracts or agreements of that description are lawful as applied to intrastate transactions, under any statute, law, or public policy now or hereafter in effect in any State, Territory, or the District of Columbia in which such resale is to be made, or to which the commodity is to be transported for such resale, and the making of such contracts or agreements shall not be an unfair method of competition under Section 5, as amended and supplemented, of this title: * * *."

In the amended answer are conclusions of law drawn by the pleader from facts stated in the answer which, or course, are not admitted by the demurrer. *Miller, Equity Procedure*, p. 172; *Ulman v. Charles St. Ave. Co.,* 83 Md. 130, 144, 34 A. 366. The amended answer, however, does charge that the contract between the appellee and Simon & Schuster, Inc., under the Maryland statute valid on its face, was entered into in restraint of trade in interstate commerce, in furtherance of a conspiracy between the publishers and booksellers under a price-fixing conspiracy and therefore, for the purpose of the demurrer alleges a violation of the Sherman Anti-Trust Act, *supra.* Appellee cites the case of the *National Fireproofing Co. v. Mason Builders' Ass'n,* 169 F. 259, 265, 26 L. R. A., N. S., 148, in which is was said: "It is not enough to establish illegality in an agreement between certain persons to show that it works harm to others. An agreement entered into for the primary

purpose of promoting the interests of the parties is not rendered illegal by the fact that it may incidentally injure third persons. * * * As a general rule it may be stated that, when the chief object of a combination is to injure or oppress third persons, it is a conspiracy; but that when such injury or oppression is merely incidental to the carrying out of a lawful purpose, it is not a conspiracy." In the case now before us, however, the appellant is not a third party but by the operation of the law, is one of the parties to the contract. It was recently said in the case of *Direct Sales Co., Inc. v. United States*, 4 Cir., 131 F. 2d 835, at page 836, decided November 12, 1942: "An unlawful agreement need not be shown to exist in any formal way. It is a rare thing that an unlawful agreement can be so shown. A mutual understanding between the parties or any two or more of them is all that is necessary to prove conspiracy. *United States v. Wilson*, D. C. W. Va., 23 F. 2d 112; *Fisher v. United States*, 4 Cir., 13 F. 2d 756."

Appellee contends, and the chancellor so held, that although the appellant became a party to the agreement between appellee and Simon & Schuster, Inc., for the purposes of the provisions of Sections 102 and 110, inclusive, of Code, 1930, Article 83, he did not become such by his own voluntary participation therein and he became such a party only in a limited sense and for a special purpose; further that appellant is made a party to the agreement by legal fiction; further that Schill could not set up as a defense the illegality of the contract because it was in violation of the Anti-Trust Act because he did not become a co-conspirator with appellee and those named in the answer; further that if the appellant violated the Fair Price Law, it was merely collateral to the alleged conspiracy in restrain of interstate commerce and Schill, being only a party to that contract by reason of the Fair Trade Act, *supra,* could not set up the illegality of that contract as a defense in his answer. We cannot agree with this part of the conclusion of the learned chancellor. Appellee cites as his

authority for such a contention the following cases: "*Connolly v. Union Sewer Pipe Co.*, 1902, 184 U. S. 540, 549, 550, 552 [22 S. Ct. 431], 46 *L. Ed.* 679, 685, 686; *Wilder* [*Mfg. Co.*] *v. Corn Products* [*Refining Co.*], 1915, 236 U. S. 165, 171, etc. [35 S. Ct. 398], 59 *L. Ed.* 520, 524; *Small* [*Co.*] *v. Lamborn* [*& Co.*], 1925, 267, U. S. 248, 252 [45 S. Ct. 300], 69 *L. Ed.* 597, 599. Cf. *Motion Picture Patents v. Ullman*, C. C. S. D. N. Y., 1892, 186 F. 174; *Haacke v. Knights of Liberty*, 1892, 76 Md. 429, 438 [25 A. 422]." Without reviewing all of these, the case of *Connolly v. Union Sewer Pipe Co., supra,* is illustrative of the principles involved in them. In that case the defendant was sued on promissory notes for sewer pipe purchased by him from the plaintiff. "Each defendant disputed his liability to the plaintiff upon the ground that prior to the making of the contracts with the defendants respectively for pipe, the plaintiff corporation entered into a combination with certain firms, corporations, and companies engaged in Ohio in the manufacture of Akron pipe; which combination, it is alleged, was in illegal restraint of trade, and therefore forbidden by the principles of the common law as recognized and enforced both in Ohio and Illinois." *Connolly v. Union Sewer Pipe Co., supra,* 184 U. S. at page 545, 22 S. Ct. at page 433, 46 *L. Ed..* 679. The court said further in that case and later on page 545 of 184 U. S., on page 434 of 22 S. Ct., 46 *L. Ed.* 679:

"Assuming, as defendants contend, that the alleged combination was illegal if tested by the principles of the common law, still it would not follow that they could, at common law, refuse to pay for pipe bought by them under special contracts with the plaintiff. The illegality of such combination did not prevent the plaintiff corporation from selling pipe that it obtained from its constituent companies or either of them. It could pass a title by a sale to anyone desiring to buy, and the buyer could not justify a refusal to pay for what he bought and received by proving that the seller had previously, in the prosecution of its business, entered into an illegal

combination with others in reference generally to the sale of Akron pipe."

It was held in the case of *Motion Picture Patents v. Ullman et al., supra,* that it was no defense to a suit for infringement of a patent that the complainant and third parties have entered into a combination or conspiracy in restraint of trade in violation of the Sherman Anti-Trust Act. The Maryland case of *Haacke v. Knights of Liberty, supra,* was one in which the defendant was a member and also treasurer of a social and literary club. As treasurer he received, on Sundays and on week-days, money belonging to the club. When sued for the money received by him and belonging to the club, he set up as a defense that the money was a result of Sunday labor in violation of the law; that such work was illegal and *ultra vires;* that the charter of the plaintiff was fraudulently obtained and the election of the officers, illegal. This court held that the defendant, having participated in the violation of the law and the infringement of the charter, that they did not constitute a valid defense under the circumstances of the case.

These authorities hereinbefore cited do not substantiate the contention of the appellee that in the instant case the appellant cannot set up as a defense that the contract, which the appellee is asking the court to enjoin the violation of, was entered into in violation of the Anti-Trust Law. The case now before us is one in which an equity court is asked to enjoin the violation of a contract which, for the purpose of the demurrer, is illegal. This is not a collateral contract, but is the contract which the appellee is asking this court to enforce against the appellant and to which the appellant was made a party by law. *Schill v. Remington-Putnam Book Co.,* 179 Md. 83, 17 A. 2d 175, 22 A. 2d 128, *supra.*

It has been held in a number of cases that a State court will not permit enforcement of a contract in violation of the Sherman Anti-Trust Act. *Allen v. Parks,* 1923, 196 Iowa 943, 195 N. W. 745; *Stewart v. W. T. Rawleigh Med. Co.,* 1916, 58 Okl. 344, 159 P. 1187; *L. R.*

162

A. 1917A, 1276; *Hunt v. W. T. Rawleigh Med. Co.*, 1918, 71 Okl. 193, 176 P. 410; *Brooks v. J. R. Watkins Med. Co.*, 1921, 81 Okl. 82, 196 P. 956. In the recent case of *Sola Electric Company v. Jefferson Electric Company*, 317 U. S. 173, 63 S. Ct. 172, at page 174, 87 *L. Ed.* 165, decided on December 7, 1942, Chief Justice Stone said: "A State by applying its own law of specific performance may not compel the performance of a contract contemplating violation of the federal land laws, *Anderson v. Carkins*, 135 U. S. 483, 10 S. Ct. 905, 34 *L. Ed.* 272. Similarly this court has declared that anyone sued upon a contract may set up as a defense that it is in violation of the Sherman Act. *E. Bement & Sons v. National Harrow Co.*, 186 U. S. 70, 88, 22 S. Ct. 747, 754, 46 *L. Ed.* 1058."

In the very recent case of *Parker, Director of Agriculture, et al. v. Brown*, 63 S. Ct. 307, at page 314, 87 *L. Ed.* 315, decided January 4, 1943, Chief Justice Stone said: "True, a State does not give immunity to those who violate the Sherman Act by authorizing them to violate it, or by declaring that their action is lawful, *Northern Securities Co. v. Unitd States*, 193 U. S. 197, 332, 344-347, 24 S. Ct. 436, 454, 459-461, 48 *L. Ed.* 679 * * *."

When a person comes into an equity court which is supposed to do equity, he must come with clean hands, and to ask that court to enforce a contract which, for the purpose of the demurrer is admitted to be illegal and to have been entered into in pursuance of an illegal conspiracy in restraint of trade, is hardly equity. Where a contract is illegal or has been entered into to accomplish a fraudulent purpose, a court of equity will not, at the suit of one of the parties to that contract, compel its execution and will refuse all affirmative aid to any of the participants. *Freeman v. Sedwick*, 6 Gill 28, 46 *Am. Dec.* 650; *Stewart v. Iglehart*, 7 Gill & J. 132, 28 *Am. Dec.* 202; *Cushwa v. Cushwa's Lessee*, 5 Md. 44; *Schuman v. Peddicord*, 50 Md. 560; *Snyder v. Snyder*, 51 Md. 77, 80; *Brown v. Reilly*, 72 Md. 489, 20 A.

239; *Baxter v. Deneen,* 98 Md. 181, 57 A. 601, 64 *L. R. A.* 949, 1 *Ann. Cas.* 147; *Lord v. Smith,* 109 Md. 42, 50, 71 A. 430; *Harrison v. Harrison,* 160 Md. 378, 384, 153 A. 58; *Baltimore American Insurance Co. v. Ulman,* 165 Md. 630, 645, 170 A. 202; *Hertz v. Mills,* 166 Md. 492, 495, 171 A. 709; *Baxter v. Wilburn,* 172 Md. 160, 162, 190 A. 773.

It, therefore, appearing that the answer does charge that the contract, valid on its face under the Maryland statute, was entered into in restraint of trade in interstate commerce, in furtherance of a conspiracy between the publishers and booksellers under a price-fixing conspiracy and therefore, for the purpose of the demurrer alleged a violation of the Sherman Anti-Trust Act, which by its wording declares such a contract invalid, and the appellant being a party who can assert such a defense, the demurrer to the amended answer should have been overruled, and in view of the stipulation between the parties, the decree should be reversed.

*Decree reversed, and bill of complaint dismissed, costs to be paid by appellee.*

On motion for reargument, the following memorandum was filed by the court *Per Curiam.*

The appellee in its motion for reargument contends among other things that "the stipulation was not intended as an admission that the facts set forth in the appellant's affirmative defense were true; nor was it intended that the appellee thereby conceded that such allegations could be proved by the appellant; nor was it intended that the stipulation was to be regarded as a waiver of the appellant's right to require proof of the said allegations set forth in the appellant's affirmative defense. The stipulation was for the sole purpose of saving the appellant the inconvenience of proving his defense prior to appeal, and to prevent any possible prejudice to his right to do so after the appeal had been heard and decided by this Court." In answer to this

contention of the appellee, it must be noted that the decree issuing the injunction, from which the appeal is taken in this case, according to its wording, was based on the pleadings and evidence. No appeal could have been taken from the order of November 24, 1941, sustaining the demurrer to the answer without leave to amend, but granting the defendant the right to make application within fifteen days to amend, for it was interlocutory in its nature and did not finally determine the matter. *Mitchell v. Smith*, 2 Md. 271; *Pitts v. Pitts*, 181 Md. 182, 29 A. 2d 300; Code, 1939, Art. 5. Secs. 30 and 31. The appellee put in the stipulation in order to permit the court below to pass an appealable decree, and it cannot now be heard to say that this was done for the purpose of helping out the appellant, when the right of this court to hear the case depends on the fact that there was a final decision.

*Motion overruled.*