**HUNT et al. v. W. T. RAWLEIGH MEDICAL CO.**

No. 7956—Opinion Filed Nov. 26, 1918.

(176 Pac. 410.)

(Syllabus.)

**1. Trial—Admission in Attorney's Opening Statement—Effect.**

An oral admission of a material fact, made by an attorney in his opening statement to the jury, if distinct and formal, and made for the purpose of dispensing with proof of some fact at the trial, is a solemn admission, and binding upon the party making it.

**2. Monopolies—Sale at Price Fixed by Manufacturer—"Restraint of Trade"—Statute.**

A contract of absolute sale, made by a manufacturer, of its various manufactured preparations, in which the purchaser agrees to sell all goods purchased "at regular retail prices to be indicated by it" (the manufacturer), where its entire product is sold throughout the country only by means of like restrictive contracts, operates as a "restraint of trade," unlawful as to interstate commerce under Act Cong. July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1916, § 8820 et seq.), upon the subject of trusts and restraints of interstate trade.

**3. Contracts—Illegality—Enforcement.**

The courts in the due administration of justice will not enforce a contract in violation of law, or permit a plaintiff to recover upon such a transaction, even though the invalidity of the contract or transaction be not affirmatively pleaded as a defense.

Error from County Court, Okmulgee County; Mark L. Bozarth, Judge.

Action by the W. T. Rawleigh Medical Company against Clarence W. Hunt and others. Judgment for plaintiff, and defendants bring error. Reversed.

Tillotson & Elliott, for plaintiffs in error.

W. W. Wood and W. W. Witten, for defendant in error.

SHARP, C. J. Plaintiff's action was to recover of Clarence W. Hunt, as principal, and W. R. Dawson and I. H. Mayfield, as guarantors, a balance of $826.81 on account of certain bills of merchandise sold Hunt, pursuant to a written contract between him and the plaintiff, the performance of which, it was charged, was guaranteed by the defendants' Dawson and Mayfield. The contract in all material respects is identical with the one before us in Stewart et al. v. W. T. Rawleigh Medical Co., 58 Okla. 344,

159 Pac. 1187, L. R. A. 1917A, 1276, and which was held to be a contract in restraint of trade, and unlawful as to interstate commerce under the Anti-Trust Act of July 2, 1890 (26 Stat. 209, c. 647 [U. S. Comp. St. 1916, § 8820 et seq.]). In defense of the judgment in favor of the defendant in error on the same form of contract condemned in the Stewart Case it is insisted: (1) That as the invalidity does not appear upon the face of the contract, or is not developed by plaintiffs' evidence, the defendants cannot take advantage of its invalidity without specially pleading it; and (2) where the plaintiffs' petition states a cause of action it is error for the court to direct a verdict upon the opening statement of counsel.

The latter point may properly be disposed of first, and will be considered in connection with the contract providing that Hunt should sell no other goods than those sold him by the medical company, which should be sold at regular retail prices, to be indicated by it, and that he should have no other business or employment, and that, if any changes should be made either in the wholesale or retail price of the goods, the company should promptly notify Hunt of such change. At the commencement of the trial counsel for plaintiff stated that the medical company was the manufacturer of extracts, medicines, stock food, and other articles of merchandise and that:

"They do their entire business by giving territories to parties throughout the country, and it is sold by local salesmen. They enter into a contract with a man that he is to sell at a price prescribed by them, and that he should pay them in a certain way, and they sell the goods to him; but he is bound by contract that he must keep their prices, and make payments in a certain way."

On the trial it was established by plaintiff's evidence that the company had manufactories at Freeport, Ill., Memphis, Tenn., and, for the Canadian trade, at Winnipeg, Canada.

It is a rule very generally observed that an oral admission of a material fact made by an attorney in his opening statement to the jury, if distinct and formal and made for the purpose of dispensing with the formal proof of some fact at the trial, is a solemn admission, and conclusive upon the party making such admission. First State Bank of Keota v. Bridges, 39 Okla. 355, 135 Pac. 378; Patterson v. Morgan, 53 Okla. 95, 155 Pac. 694. The latter opinion cites in its sup

port Oscanyan v. Winchester Repeating Arms Co., 103 U. S. 261, 26 L. Ed. 539, wherein, respecting admissions of counsel, it is said:

"In the trial of a cause, the admissions of counsel, as to matters to be proved, are constantly received and acted upon. They may dispense with proof of facts for which witnesses would otherwise be called. They may limit the demand made or the set-off claimed. Indeed, any fact, bearing upon the issues involved, admitted by counsel, may be the ground of 'the court's procedure equally as if established by the clearest proof. And if in the progress of a trial. either by such admission or proof, a fact is developed which must necessarily put an end to the action, the court may, upon its own motion or that of counsel, act upon it and close the case."

The purpose of the statement was to inform the jury the manner in which the plaintiff transacted business throughout the country; and, being an admission of counsel solemnly made, no proof of the facts so admitted was necessary. As to the manner of doing business and its scope, the statement supplemented the contract. Considered together, the fact of the manner in which the plaintiff carried on its business was quite as fully established as was done by admission in the Stewart Case, in which it was agreed at the trial:

"That the contracts made by plaintiff in the sale of its goods were identical with the Minette contract, and that it sold its products solely by means of such contracts."

In the case at bar with equal effect it was admitted that the company did its entire business throughout the country by grant of territory to local salesmen, who entered into contracts with the purchaser at a price fixed by the medical company. Clearly the company's plan of doing business and the contract made with Hunt, as established at the trial, was in violation of the federal statute upon the subject of trusts and restraints of interstate trade, and which act in paragraph 1 declares illegal every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several states or with foreign nations. Applying this statute in the Stewart Case. it was held to be the well-established law that a system of contracts between employers, jobbers, and retailers, by which the employers attempt to control the prices for all sales by the dealers, at wholesale or retail, from producers to purchasers, eliminating all competition, and fixing the

amount which the consumer shall pay, amounts to a restraint of trade, and is invalid, both at common law and so far as it affects interstate commerce, under the Sherman Anti-Trust Act.

Upon the point first urged in support of an affirmance of the judgment of the trial court, it is true that the defense of the invalidity of the contract was not specifically raised by answer. This failure, counsel say, renders the defense unavailable. If such were the law, the enforcement of a contract, void either at common law or by statute or because of a violation of public policy, would depend upon the state of the defendant's pleadings. If the defense was not affirmatively pleaded, the contract would be enforced, while in another case the same contract would not be enforced, if its character was made an issue by appropriate allegations of the answer. That such is not the law was in effect held in McGuffin v. Coyle, 16 Okla. 648, 85 Pac. 954, 89 Pac. 962. 6 L. R. A. (N. S.) 524. The McGuffin Case cited in its support and reviewed at length the cases of Hall v. Coppell, 7 Wall. 542. 19 L. Ed. 244, and Oscanyan v. Winchester Repeating Arms Co., 103 U. S. 261, 26 L. Ed. 539. In the former case Coppell was the acting British consul in New Orleans and during the Civil War entered into a contract with one Hall, by which the latter agreed to furnish him with sundry bales of catton, which he was to cause to be protected from seizure by the federal officers, and transported to New Orleans and there disposed of to the best advantage; he to receive one-third of the profits for his compensation. For the breach of this contract he sued Hall, who set up that the contract was against public policy and void. and also a reconventional demand or counterclaim for damages for a breach of the contract by Coppell. The trial court, among other things, instructed the jury that, if the contract was illegal, the illegality had been waived by the reconventional demand of the defendant. This instruction on appeal the Supreme Court said was founded upon a misconception of the law, and added that:

"In such cases there can be no waiver. The defense is allowed, not for the sake of the defendant, but of the law itself. The principle is indispensable to the purity of its administration. It will not enforce what it has forbidden and denounced. The maxim 'Ex dolo malo non oritur actio,' is limited by no such qualification. The proposition to the contrary strikes us as hardly worthy of serious refutation. Whenever the illegality

appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case. No consent of the defendant can neutralize its effect. A stipulation in the most solemn form to waive the objection, would be tainted with the vice of the original contract, and void for the same reasons. Wherever the contamination reaches, it destroys. The principle to be extracted from all the cases is that the law will not lend its support to a claim founded upon its violation."

In the Oscanyan Case, many authorities are reviewed, and the conclusion reached that the illegality of the contract in suit can be considered, although not affirmatively pleaded. Indeed, it was said that the objection to a recovery could not be obviated or waived by any system of pleading, or even by the express stipulation of the parties: that it was one which the court itself was bound to raise in the interest of the due administration of justice. To the same effect is the case of Shelton v. Pruessner, 52 Kan. 570 31 Pac. 201, 22 L. R. A. 709, where'n it was announced that the courts, in the due administration of justice, will not enforce a contract in violation of law, or permit a plaintiff to recover upon a transaction against public policy, even if the invalidity of the contract or transaction be not specially pleaded. In Wright v. Cudahy, 168 Ill. 86, 48 N. E. 39, it was insisted that, as the illegality of the contract was not set up as a defense in the answer, the court could not consider the evidence on that branch of the case. The testimony adduced on the part of the complainant tended strongly to show that the contract was illegal, and it was observed that, even had it not, it was not error for the courts to inquire into the nature of the contract which it was asked to enforce, and, if it was found to be against public policy or one prohibited by public law, to refuse to aid either party, and leave them where they had placed themselves. It was said that the parties could not, whether by mistake or design, compel the court to adjudicate upon their alleged rights growing out of a contract void because against public policy or in violation of public law, by the simple process of narrowing their pleadings: that the court itself had the right to know the nature of the contract it was called upon to enforce, and to deny all relief, where it appeared that such contract was in violation of law or the public policy of the state, whether so alleged in the pleading or not. "To hold otherwise." it was said, "would subordinate the courts to the ingenious devices of men engaged in illegal and even criminal transactions; and

compel them to carry out in the solemn forms of law, and by its resistless power, transactions which the same law had pronounced criminal and void."

No court should lend its aid to a litigant who founds his cause of action upon an immoral or illegal act. If from the plaintiff's own statement or otherwise, the cause of action appears to arise ex turpi causa, or the transgression of a positive law of the country, state or federal, there the court should say he has no right to be assisted. It is upon that ground the court goes; not for the sake of the defendant, but because it will not lend its aid to such a plaintiff.

It would be a travesty upon the law for the courts to lend their jurisdiction in the enforcement of the law to litigants whose contracts are in violation of law; likewise, in such cases, for the courts to be controlled in the exercise of their power in a given case to the particular state of the pleadings. Other considerations must determine the court's duty than mere points scored evidencing the ability of the pleader, when it is made to appear that an effort is being put forth to use the courts as an instrumentality for the enforcement of a void contract. Many authorities supporting the rule announced are found collected in a note to Ann. Cas. 1912A, 1033.

As it was sufficiently developed at the trial that the contract was in violation of the act of Congress of July 2, 1890. the court should have sustained the defendant's demurrer to the plaintiff's testimony. Because of the error in not so doing, the judgment of the trial court is reversed.

All the Justices concurring, except TURNER and BRETT, JJ.. absent.