## RUST et al. v. GILLESPIE.

No. 11076—Opinion Filed June 5, 1923.

(Syllabus.)

**1. Courts—Jurisdiction of Oklahoma Territory Probate Courts — Invalidity of Decrees Relating to Real Estate.**

Probate courts of Oklahoma, during territorial government, had no power, under the organic act, nor under the statutes of Oklahoma Territory, to declare a trust relating to real estate, nor to control or regulate trust estates, nor decree cancellation of deeds to real estate, nor determine title to real estate, nor were they vested with general equity powers; and where such court has assumed to do any of the things above mentioned, its decrees and judgments are void.

**2. Equity—Fraudulent Trust Agreement—Refusal of Relief—Cancellation of Deed.**

E. Rust died intestate holding legal title to certain land under a deed from the original entryman. His wife, Lollie Rust, became administratrix of his estate. Jess Bell, father of administratrix, and father-in-law of deceased, claimed that he paid for the land, but had deed to same made to deceased under an oral agreement with deceased that it would be held in trust and reconveyed to Jess Bell. Upon petition to do so the probate court declared said deed to be a trust deed, decreed its cancellation, and ordered administratrix to reconvey the land to Jess Bell. Thereafter Jess Bell, holding administratrix's deed to same, conveyed the land to George T. Gillespie, and 20 years thereafter the children and heirs of E. Rust brought suit to cancel administratrix's deed and Gillespie's deed, on the ground that the probate court proceedings were void for lack of jurisdictional powers, and on the further ground that the trust agreement being for a fraudulent purpose, viz., to enable Jess Bell to fraudulently file upon government land, equity would grant no relief, but leave the parties where it found them; that is, leave legal title in E. Rust and his heirs as they were at the beginning of the probate court proceedings. Held, the district court did not find the parties in the position which they were at the beginning of the probate proceedings, but found them in a reverse position, and in its equity powers properly ordered that they be left as it found them, and finding that plaintiffs' claim for relief had grown out of a fraudulent agreement to which deceased was a party, the court properly refused relief and left the parties where it found them.

A court of equity will deal with parties to a fraudulent transaction as it finds them, and not as they may have been at some previous time.

**3. Same — "Clean Hands" — Transactions Against Public Policy.**

Under the maxim, "he who comes into equity must come with clean hands", a court of equity will not lend its aid in any manner to one who has been guilty of unlawful or unequitable conduct in a transaction from which he seeks relief, nor to one who has been a participant in a transaction the purpose of which was to defraud a third person, to defraud creditors, or to defraud the government, nor to a party to a transaction whose purpose is violative of public policy.

**4. Same—Effect Upon Rights of Heirs and Assigns.**

The above maxim is applied not only to participants in a fradulent transaction, but to their heirs and to all parties claiming under or through either of them.

**5. Same.**

Record examined, and the evidence found to be insufficient to entitle plaintiffs to the relief sought, and that the court did not err in sustaining the demurrer.

Error from District Court, Payne County; Arthur R. Swank, Judge.

Action by Harry Rust and others against George T. Gillespie to cancel deeds. Judgment for defendants, and plaintiffs bring error. Affirmed.

Freeman E. Miller, for plaintiffs in error.

W. H. Wilcox, for defendant in error.

HARRISON, J. Plaintiffs in error filed this suit in the district court of Payne county December 30, 1916, but it was not prosecuted to judgment until October, 1919. The object of the suit was the cancellation of an administratrix's deed, conveying a certain tract of land to which E. Rust, deceased husband of administratrix, had title, to one Jess Bell, and also the cancellation of a warranty deed from said Jess Bell to the defendant in error, George T. Gillespie.

The facts, more fully stated, are as follows:

Jess Bell was the father of the administratrix and father-in-law of the deceased, E. Rust; that is, the administratrix was the daughter, and the deceased, E. Rust, was the son-in-law of Jess Bell.

In June, 1893, a warranty deed to the land in question was made to E. Rust by the original entryman and his wife. E. Rust thereby held the apparent legal title to the land. On November 15, 1893, E. Rust died intestate, leaving a surviving widow, Lollie Rust, and a son, Harry, aged four years, a daughter, Jennie, aged two years, and an unborn son, Walter, who was born February 17, 1894, some three months after his father's death. On November 28, 1893, said Jess Bell filed a petition in the probate court of Payne county alleging that he had furnished all the money which went to pay the original entryman for the land in question, but that he had the deed to same made to his son-in-law, E. Rust, to be held in trust under an agreement between himself, Jess Bell, and E. Rust, and that under the circumstances and by virtue of section 1393, Statutes 1893, the same being section 6410, Rev. Laws 1910, and section 1306, Comp. Stats. 1921, if E. Rust were living he might be made to reconvey said land to him, Jess Bell; wherefore he prayed the probate court for an order directing the administratrix of E. Rust's estate to reconvey said land to him by an administratrix's deed. On January 2, 1894, the probate court granted the order prayed for and directed the administratrix to make the deed, and on the same day, Lollie Rust, as administratrix of her deceased husband's estate, executed said deed to Jess Bell.

It does not appear in the record when Lollie Rust, widow of deceased, daughter of Jess Bell, and mother of plaintiffs in error, was appointed administratrix, nor upon whose petition, if any, she was appointed, nor does it appear that she was ever appointed, nor does it appear that a guardian of the property of the children was ever appointed, nor that a guardian ad litem was appointed for them at the hearing, nor that any service was had upon them, but it does appear that the deed to Jess Bell was made in the capacity of administratrix of deceased's estate and that it was acknowledged as such.

Jess Bell held this title and occupied said land until December 9, 1896, when he and his wife conveyed same by warranty deed to defendant in error, George T. Gillespie. Within a short time thereafter, Gillespie went into possession of the land, resided thereon, and cultivated same undisturbed until the filing of this suit, December 30, 1916, a period of about 20 years.

On said December 30, 1916, plaintiffs in error filed this suit to cancel the administratrix's deed to Jess Bell and the warranty deed from Jess Bell and wife to defendant in error, Gillespie.

The grounds alleged and relied upon for the cancellation of said deed were, in substance: That the probate court had declared the plain warranty deed from the original entryman, Nathan H. High, to E. Rust to be a trust deed, and had decreed the cancellation of same and ordered the administratrix to reconvey the land to Jess Bell; that the administratrix pursuant to said order conveyed said land to Jess Bell; that thereafter Jess Bell conveyed same to George T. Gillespie, and that all of said proceedings and said deeds were void for the reasons:

"1st. The plaintiffs in error Harry Rust and Jennie Hobson were infant minors at the time, and Walter Rust was an infant unborn, and neither of them was served with notice of said proceedings nor had either of them any knowledge of the fact that their deceased father owned the legal title to said land; that no guardian ad litem was appointed to represent said minors, and therefore said proceedings were void for lack of jurisdiction over said minors.

"2nd. That if proper service had been made on said minors, the probate court was without jurisdiction under the law to declare a trust, to decree the cancellation of a plain warranty deed, or to try or determine the title to real estate."

As a further ground it was alleged that if any agreement was made between their deceased father and their grandfather, Jess Bell, whereby Jess Bell was to furnish the money in question and have deed to the land made to E. Rust, E. Rust to hold same in trust for Jess Bell, such an agreement was void for the reason that if made at all, it

was made for the fraudulent purpose of enabling Jess Bell to make the "run" into, and procure a homestead in, the Cherokee Strip, which was opened to settlement in September, 1893. The homestead laws denying a party who owned 160 acres of land the right to file upon a homestead, and that such agreement, if made at all, was made for the purpose of defrauding the government by filing upon a homestead in the Cherokee Strip when in fact he already owned 160 acres of land. That such deed, if it was a trust deed, having been made for a fraudulent purpose, would not be disturbed by a court of equity, but that the parties to such transaction "would be left where equity found them."

Issue was joined as to all of the grounds alleged; also issue was joined as to whether plaintiffs, Harry Rust, Jennie Hobson, and Walter Rust, or either of them was barred by limitation of statutes from maintaining this action.

In April, 1919, the cause came on for trial, a jury was impaneled and sworn to try same and plaintiffs offered their evidence in support of their allegations and rested; thereupon defendant in error demurred to the evidence, and the court sustained the demurrer, dismissed the plaintiffs' petition and rendered judgment for defendant in error, George T. Gillespie. From such judgment and order overruling motion for new trial plaintiffs in error prosecute this appeal.

The petition in error assigns 14 separate errors. These, however, are discussed under the following propositions, to wit:

(1) The probate court of Payne county, Oklahoma, had no jurisdiction of the subject-matter contained in the order and judgment entered as to the real estate in controversy on January 2, 1894, and its order and judgment and the administratrix's deed to the land in controversy based thereon are null and void and without legal effect because of such want of jurisdiction.

(2) The probate court of Payne county, Oklahoma Territory, had no jurisdiction of the persons of these plaintiffs in error in the proceedings had and taken in said court in 1893-4, and the orders and judgment of said court and the administratrix's deed of the lands in controversy were null and void.

(3) The cause of action sued on by the plaintiffs here was not barred by the statute of limitation.

(4) That the court erred in sustaining demurrer to the evidence.

(5) Error in rejecting certain testimony offered by plaintiffs below.

The entire argument and discussion of plaintiffs in error seemed to be directed to support two decisive theories: (1) That the probate court having no jurisdiction, its proceedings were void; (2) that the deed to E. Rust, being for a fraudulent purpose, would not be set aside by a court of equity.

As to the first proposition, there is no question but that the probate proceedings were void. Probate courts of Oklahoma Territory had no authority, under the organic law of the territory or under the territorial statutes, to try or determine title to real estate. Garrett v. London, 15 Okla. 222, 81 Pac. 421; Parker v. Lynch, 7 Okla. 631, 56 Pac. 1082; In re Bolen's Estate, 22 Okla. 851, 98 Pac. 934; Austin v. Chambers, 33 Okla. 40, 124 Pac. 310; Crump v. Pitchford, 21 Okla. 808, 104 Pac. 911; Jefferson v. Winkler, 26 Okla. 653, 110 Pac. 755.

Besides, as a general proposition of law, courts of probate are creatures of the law and limited in their jurisdiction. State v. Frederick (Idaho) 155 Pac. 977; State v. Dunlap (Idaho) 156 Pac. 1141; Stewart v. Lohr (Wash.) 25 Pac. 457; 11 Cyc. 796; 18 Cyc. 745; Simonton v. Simonton (Idaho) 193 Pac. 386; In re Pepin's Estate (Mont.) 163 Pac. 104; Church's Probate Law & Prac.

Not having general equity powers, courts of probate have no jurisdiction over the subject of trusts, or the regulation and control of trust estates; these questions belonging exclusively to courts of equity. McCoy v. McCoy, 30 Okla. 379, 121 Pac. 176; Oelrichs v. Spain, 15 Wall. (U. S.) 211; Oelrichs v. Williams, 21 L. Ed. (U. S.) 43; Kupferman v. McGehee, 63 Ga. 256; Pomeroy's Equity Jurisprudence; Flint on Trusts; Perry on Trusts; 16 Am. Eng. (2nd Ed.) 88.

Hence it must be conceded that the probate court had no jurisdiction to do any of the things which it pretended to do in reference to the land in question, and that all proceedings in reference thereto were absolutely void.

This, we think, sufficiently disposes of the first theory.

As to the second theory, that the alleged trust deed from the original entryman to E. Rust being for a fraudulent purpose, viz., to enable Jess Bell to make a homestead entry in the Cherokee Strip in violation of the United States land laws, a court of equity would not enforce such a contract, it is obviously true; but neither of these the-

ories was decisive of the real question before the trial court. Plaintiffs in error contend that the trial court should have decreed a cancellation of the two instruments of conveyance upon the grounds: (1) That the probate proceedings were void; (2) that the trust agreement between Jess Bell and E. Rust, being fraudulent, was also void, and that a court of equity would leave the parties where it found them; that is, finding E. Rust holding title under a plain warranty deed. It would not enforce a fraudulent agreement and order reconveyance to Jess Bell, but would leave the parties where they stood. This contention would be well taken if the probate court had been a court of equity, but it was not: the probate court had no equity powers, but the district court, in which the case at bar was tried, had equity jurisdiction, but did not find the parties in the same position in which the probate court found them. The district court found them in reverse position; it found George T. Gillespie holding title under a plain warranty deed from Jess Bell and wife, and that Gillespie had been in undisturbed possession under said deed for a period of 20 years; on the other hand, it found the heirs of E. Rust divested of their title under a fraudulent agreement to which E. Rust, their father, was an acknowledged party. The position of the parties had become completely reversed.

Hence the rule that a court of equity would have left the parties where the probate court found them, at the time it dealt with them, applied and governed the district court in this case in leaving the parties where it found them at the time it was called upon to deal with them. The question of the validity of the probate proceedings was immaterial to the district court; it could disregard them altogether or treat them as a nullity, and then under its equity powers proceed to deal with the parties as it found them. It found Gillespie holding and occupying under a deed which on its face evidenced a valid title; on the other hand, it found the heirs of E. Rust basing their claim to title upon a fraudulent agreement to which E. Rust was a party. This was the sole underlying basis of plaintiffs in error's claim; they alleged the agreement to have been fraudulent and rested their rights upon the fact of such fraud, thereby conceding the father, through whom they claim to have been a party to the fraud upon which they based their claim. We say this for the reason that, in this suit, plaintiffs had no rights unless there was an agreement of some kind between Rust and Bell, and there was no agreement except for a fraudulent purpose. and if for such purpose, then E. Rust was a party thereto.

It will be observed that plaintiffs nowhere deny that the deed held by E. Rust, though held for a fraudulent purpose, was in fact intended to be a trust deed; they nowhere deny that Jess Bell did in fact furnish all the money which went to pay the original entryman for the land to which E. Rust held deed; they nowhere claim that E. Rust furnished a penny of the purchase price of such land or did anything in consideration for which deed was made to him, except the consideration of aiding Jess Bell in carrying out the alleged fraudulent purpose.

The trial court, finding the parties in the position in which it found them and finding that the sole basis of plaintiffs' claim rested upon the fact of the fraudulent agreement, after hearing the testimony in support of plaintiffs' ground for relief, and the argument upon demurrer to the sufficiency of the evidence, considered same insufficient. under all the circumstances, to warrant the cancellation of Gillespie's deed and, observing the rule of equity which plaintiffs in error invoke, left the parties where it found them.

We will not say as a question of law that the evidence was sufficient to entitle plaintiffs to the relief sought, nor that the court erred in sustaining the demurrer thereto.

The familiar maxim, "he who comes into equity must come with clean hands"; which, expressed in different form, "he that committeth iniquity shall not have equity," is recognized as a fundamental principle of equity jurisprudence which governs the discretionary powers of courts of equity in the exercise of their remedial functions and furnishes a universal rule affecting their entire administrations as to remedies and remedial rights. See notes to Medford v. Levy (W.Va.) 2 L. R. A. 368; also 1 Pomeroy, Equity Jurisprudence, 434; 21 C. J. 180; 16 Cyc. 144; 10 R. C. L. 389, par. 139. Plaintiffs cannot be said to have come into court with clean hands, nor to have been sufficiently washed of iniquity. As stated above, plaintiffs' alleged right grew out of a wrong, a fraudulent agreement to which the party through whom they claim was a wrongdoer. It has been held that a right cannot arise to any one out of his own wrong, and that where both are clearly in the wrong, defendant holds

the stronger ground. 21 C. J. 183, sec. 164. Also that equity will not aid persons to get relief from situations which result from conveyance of their property in fraud of third persons, and not only is a fraudulent debtor denied relief, but also his fraudulent grantee when he comes into equity to assert his claim. Equity will refuse aid to either party where both are participants in a fraudulent transaction. 21 C. J. 184, sec. 167; 10 R. C. L. 353, sec. 102; Elliot on Contracts, secs. 657 to 660 inc.; 16 Cyc. 145, also 6 Cyc. 287.

The above principles are invariably applied where parties attempt to enforce alleged rights growing out of a fraudulent agreement as to public lands. Beck v. Flourney Live Stock, 65 Fed. 30, 12 C. C. A. 497; Evans v. Folsom, 5 Minn. 422; American Association v. Ennis (Ky.) 60 S. W. 388; Cawthorn v. McCoy, 33 Ala. 65; Dial v. Hare (Ala.) 54 Am. Dec. 179.

Under said maxim, "he who comes into equity must come with clean hands," equity will not lend its aid in any manner to one who has been guilty of unlawful or unequitable conduct in a transaction from which he seeks relief, nor to one who has been a participant in a transaction the purpose of which was to defraud a third person, to defraud creditors, to defraud the government, nor to a party to a transaction whose purpose is violative of public policy. Richardson v. Walton, 49 Fed. 888; Farley v. St. Paul R. Co., 14 Fed. 114; Creath v. Sims, 12 L. Ed. (U. S.) 110; also 16 Cyc. 144-5; 19 Cent. Dig. Title, Equity, secs. 185-7.

The maxim is also applied not only to the participants in the transaction, but to their heirs and to all parties claiming under or through either of them. 10 R. C. L. sec. 102, page 354; McClintock v. Loisseau (W. Va.) 2 L. R. A. 816, and notes.

There is probably three sufficient reasons for the application of the maxims to this extent, viz:

(1) That if the parties through whom heirs claim have no enforceable right, then the heirs have inherited none.

(2) Heirs attempting to enforce a right growing out of such transaction, knowing the character of such transaction, do themselves become tainted with the fraud, and equity will not aid them.

(3) That in its very nature equity withholds itself from transactions tainted with fraud. Randall v. Howard, 17 L. Ed. (U. S.) 269; Bartle v. Coleman, 2 Fed. Cas. No. 1072,

affirmed in 7 L. Ed. 825; Selz v. Unna, 21 Fed. Cas. No. 1265, affirmed in 18 L. Ed. 799.

In view of the foregoing examples of the application of the maxim and the extent of its application, and in view of the circumstances in this case, as disclosed by the record, we agree with the trial court that the evidence and the showing made upon the whole was insufficient to warrant the court in granting the relief sought.

This we think disposes of all the questions presented in the petition in error and brief and argument by plaintiffs in error. Plaintiffs in error claim error in the rejection of certain testimony and ask reversal upon such ground, but the purpose of the testimony rejected being either to establish the fraudulent character of the alleged trust agreement, or to show knowledge of defendant in error of such fraud, or to show that plaintiffs were not barred by statute of limitation, it was immaterial, for, had all of the testimony offered by plaintiffs been received, it could not have changed the rule of equity. Conceding that none of plaintiffs in error were barred by limitation, conceding that the transaction upon which they based their claim was fraud, and conceding that Gillespie had knowledge of such fraud, still equity would decline to grant relief, but would leave the parties where it found them. 10 R. C. L. sec. 102, page 353; 1 Pomeroy's Equity Jur. secs. 401, 438; 21 C. J. sec. 167, pages 184-5; 2 Pomeroy's Equity Jur. 457; Story's Equity, sec. 298.

It is our opinion that, under the record and from the very nature of the grounds upon which plaintiffs in error stood, they were entitled to no relief.

The judgment is affirmed.

JOHNSON, C. J. and McNEILL, KENNAMER, and COCHRAN, JJ., concur.