### PETTY v. KNIGHT-PETTY MERC. CO.

No. 12217—Opinion Filed Nov. 13, 1923.

Rehearing Denied Feb. 19, 1924.

1. **Appeal and Error — Admission of Evidence — Burden to Show Prejudicial Error.**

Upon the trial of a case, where incompetent evidence is admitted as to the contents of certain records, but the records themselves are afterwards introduced, and where upon appeal to this court it is not claimed that such incompetent evidence in any way contradicted such records, and it is not apparent from the record of the trial that such evidence affected injuriously the rights of the party against whom it was introduced, the burden of showing such prejudice is on the party complaining thereof.

2. **Pleading — Variance — Cured by Opening Statement.**

In an action for money had and received to plaintiff's use, where the proof shows merely charges and credits on a running account and the balance shown thereby, but shows no actual transfer or receipt of money, such variance, if otherwise fatal, is cured by the opening statement of counsel for defendant in which he expressly admits that his client received the money and claims he has a right to retain it.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Cleveland County; Frank Mathews, Judge.

Action by Knight-Petty Mercantile Company, a corporation, against Clarence Petty to recover the sum of $1,232. Judgment for plaintiff for the sum of $832, and defendant brings error. Affirmed.

It appears from an examination of the record in this case that Clarence Petty and his son, Curtis Petty, D. F. Knight, and R. F. Ellinger, in January, 1917, agreed upon the purchase of a certain mercantile establishment and to form a corporation for conducting said business after its purchase. After the company was organized $7,000 of the stock was issued to Clarence Petty, who was president, $3,000 to D. F. Knight, who was vice-president and treasurer, and $1,000 to Curtis Petty, who was secretary. R. F. Ellinger paid for and owned $4,000 worth of the $7,000 stock standing in the name of Clarence Petty, but the said Ellinger did not appear on the books of the company as a stockholder and his interest in the company was a silent interest. At, or about, the time of organizing the company it was agreed among the four interested persons that Clarence Petty, D. F. Knight, and Curtis Petty should work in the store and conduct the business, Clarence Petty being designated as manager. It was further agreed between the parties that the three last mentioned should each receive a salary of $75 a month for their services. After the business became a going concern it became necessary to employ additional help, and in the fall of 1917 it appears from the record that Curtis Petty raised the question as to salary of the three officers, contending that since the other clerk or clerks employed in the store received $75 a month, the three officers should receive more. It was thereupon agreed between Clarence Petty, Curtis Petty, D. F. Knight, and R. F. Ellinger that the salary of the three officers should be increased to $100 per month. Thereafter, and in February, 1918, Curtis Petty was called away, presumably under the Selective Service Act, for duties connected with the military activities of the government. After Curtis left, Clarence Petty said to D. F. Knght that he would not continue as manager of the business for the same salary that he, Knight, was receiving; that he, Petty, considered his services worth more than Knight's. Knight would not agree to this. Nothing was said to Ellinger about it. In March, 1919, Clarence severed his connection with the company. After he went out as manager an audit of the boooks disclosed that at the end of the year, 1918, he had credited himself on the books of the company with a lump sum of $1,800 for salary for 1918. This action was brought to recover from Petty the excess salary so paid to himself, together with a balance due upon his merchandise account.

The parties will be hereafter referred to as plaintiff and defendant, as they appeared in the trial court.

Rittenhouse & Rittenhouse and Wilson, Tomerlin & Threlkeld, for plaintiff in error.

J. B. Dudley and Williams & Luttrel, for defendant in error.

Opinion by LOGSDON, C. As presented in the brief of defendant, only two contentions are made in this court, as follows:

First, that the trial court erroneously admitted certain testimony over the objections and exceptions of defendant.

Second, that there is a variance between the allegations and the proof on the part of plaintiff, and that the evidence is therefore insufficient to support the verdict and judgment.

Under his first contention defendant sets out in his brief a large portion of the testimony of the witness Ellinger as to the contents of the general ledger accounts of the corporation. At the time these accounts were entered the witness was not a director of the corporation, but at the time he testified he was both a director and officer. These accounts had been kept and the entries made by the defendant, or under his direction, while he was an officer and director in the company. They were books and property of the corporation. These accounts were introduced in evidence. No contention is made that this testimony contradicted those records. It was merely explanatory of their contents. He was also permitted to testify concerning the contents of the articles of incorporation and of the certificate of incorporation. These two instruments were introduced in evidence, and, while oral testimony as to their contents was objectionable and should have been excluded, it is inconceivable how it could be prejudicial. The testimony was not in contradiction of them.

A complaining party has the burden of pointing out and showing the prejudicial effect of testimony erroneously admitted or excluded where such prejudice is not apparent on the face of the record. This has not been done in reference to the testimony of Ellinger.

"The court, in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." Comp. Stat. 1921, sec. 319.

This statute applies in the situation here presented. Hertzel et al. v. Weber et al., 31 Okla. 5, 120 Pac. 589; O. B. Garrison & Co. v. Meyers et al., 52 Okla. 100, 152 Pac. 838; Baird v. Connover, 66 Okla. 288, 168 Pac. 997; Boatman v. Coverdale, 80 Okla. 9, 193 Pac. 874.

Under his second contention defendant insists that because plaintiff's second and fourth causes of action were for money had and received by defendant to plaintiff's use, while the proof showed merely credits on his account with the company without any actual or manual transfer of the money, therefore there is a variance between the allegations and the proof fatal to a recovery. In his opening statement to the jury, upon being interrupted by plaintiff's counsel, counsel for defendant used the following language:

"We are not bringing suit to recover anything, but they are bringing a suit, and they have got to show that we are not entitled to it. They claim we over paid ourselves. If we can show that we are entitled to it, we are entitled to show it by a general denial. They claim that we have this money; we claim that we have a right to retain it, and we deny the allegation that we have no right to the money. We are not suing to recover: they are the plaintiff in this action and not the defendant, and therefore we have a right to show any defense under the general denial that will entitle us to defeat their recovery."

This was a clear and unequivocal admission that defendant received the money and that he was going to keep it if he could. It showed a clear understanding and comprehension of the issue raised by the pleadings. This statement constitutes a solemn admission in the course of the trial that defendant received the money as alleged by plaintiff, and defendant is bound by it. Patterson v. Morgan, 53 Okla. 95, 155 Pac. 694; Hunt v. Rawleigh Medical Co., 71 Oklahoma, 176 Pac. 410; Grimmett v. Grimmett, 80 Okla. 176, 195 Pac. 133.

But it is further contended that the evidence is insufficient to warrant recovery under the second and fourth causes of action because it is not shown that the salary received and credited by defendant on the books of the company was unreasonable or disproportionate to the value of the services rendered. It is sufficient answer to this contention to say that the salary received by defendant was not authorized by the corporation. Defendant doesn't even contend that it was. His direct testimony on this point was as follows:

"Q. What statements did you ever make to Mr. Knight and to Mr. Ellinger during the year 1918, as to what your salary would be for that year? A. Well, when Curtis was leaving, about the time that Curtis was leaving, I told Mr. Knight that I could not stay on the work on an equal salary with him, and that I could not think of doing it, and he answered back that I was buying the meats and the goods at cost that I got out of the store, and that that ought to satisfy me. Q. Well, did he object to you draw-

ing any more than he? A. Yes, he objected."

On cross-examination (C.-M. p. 163) he testified:

"Q. So you agreed with yourself as president of this corporation that your services for 1918 were worth $150 a month? A. Yes, sir. Q. And you gave yourself credit for it at the close of 1918? A. Yes, sir. Q. And when did you come to the conclusion that $150 a month—that your salary was to be $150 a month? A. Oh, I guess I concluded that all along, possibly. Q. Well, why didn't you carry it out and credit yourself with $150 a month there? A. Well, I was not keeping up with that part of it."

It is thus seen that with full knowledge that the other director, Knight, objected to the increase of salary, and without consulting Mr. Ellinger, who silently owned $4.000 of the $7,000 stock standing in defendant's name on the books of the company, defendant decided to pay himself $150 a month for the year 1918. Instead of making the books show this from month to month he waited until the close of the year and then credited a lump sum of $1,800.

In 7 R. C. L., sec. 446, the general principle applicable to the facts here presented is thus stated:

"The broad rule has been announced that a director of a corporation cannot recover for services rendered to it except as an express contract therefor can be shown, although such services are not within the scope of his official duties. As has been said, corporate officers have ample opportunities to adjust and fix their compensation before they render their services, and no great mischief is likely to result from compelling them to do so, but if, on the other hand, actions are to be maintained by corporate officers for services which, however faithful and valuable, were not rendered on the foot of an express contract, there would, be no limitation to corporate liabilities, and stockholders would be devoured by officers."

Defendant's brief presents and relies on no authorities sustaining the contentions made, and it is evident that he reposes no very great confidence in the arguments advanced in opposition to the general principles involved. It is therefore concluded upon the whole case that no prejudicial error has been shown in the admission or rejection of testimony by the trial court, and that the verdict of the jury is amply sustained.

For the reasons herein stated the judgment of the trial court should be in all things affirmed.

By the Court: It is so ordered.