## SKIRVIN et al. v. SIGLER.

No. 24583. March 8, 1938.

Rehearing Denied July 26, 1938.

Application for Leave to File Second Petition for Rehearing Denied Oct. 25, 1938.

S. P. Freeling, Fred P. Branson, and Bliss Kelly, for plaintiffs in error.

V. P. Crowe, R. R. Bell, W. E. Latimer, E. C. Chastain, and E. E. Dorsa, for defendant in error.

CORN, J. This is an appeal from a judgment of the district court of Oklahoma county, for damages, entered against the defendants on the 6th day of September, 1932, pursuant to a verdict of a jury. The parties will be referred to as they appeared in the trial court.

Plaintiff alleged in his petition that: On December 5, 1929, he entered into a written contract with the Skirvin Operating Company, signed by W. B. Skirvin as its president, for the leasing, for a term of five years from date, of the Skirvin Barber Shop situated in the Skirvin Hotel in Oklahoma City; such lease included all the furniture, fixtures, and equipment thereon. A purported copy thereof being attached and marked "Exhibit A."

Plaintiff further alleged that he entered into possession of the barber shop under the terms of said lease and operated same until the month of April; that at great expense he placed the barber shop in first class operating condition and brought Earl Sigler from Tulsa, Okla., to operate the same as his manager, which he did until the 2nd day of June, 1931; and that the profits from the operation thereof were greatly increased during that period of time. According to the allegations of the petition, notice was given the plaintiff on May 30, 1931, that such lease would be terminated, unless the sum of $4,000 was paid by him to the defendants; and thereafter, on June 1, 1931, the defendant, Skirvin Operating Company, again notified plaintiff to pay such sum or vacate, and

upon plaintiff's refusal to vacate he was threatened with ejection; that thereafter plaintiff operated the barber shop until June 2, 1931, at which time the defendant W. B. Skirvin, acting for himself and said Skirvin Operating Company, took possession of the barber shop and caused the plaintiff's agent, Earl Sigler, to be ejected therefrom.

It is then alleged that future or prospective profits from the operating of the barber shop during the remainder of the term of such lease would have doubled each year and would have amounted to $28,076.82. Certain personal property and supplies valued at $437.30 are listed as having been taken by defendants. It is specifically alleged that defendant W. B. Skirvin was acting not only for himself but for the other defendant, Skirvin Operating Company, and that by reason of malicious acts, plaintiff is entitled to recover $10,000 exemplary damages and an additional sum of $1,000 attorney's fee, and $60 damages for loss of time in traveling, making a total of $39,-574.12 and costs prayed for in the first cause of action.

Under the second cause of action the plaintiff alleges that he is entitled to three times the amount of his actual damages—$46,989.02.

The defendants jointly answered and filed cross-petition, said answer containing a general denial and a rescission or modification of the lease contract pleaded by plaintiff, alleging that on June 1, 1930, a contract, in writing, was executed canceling the lease contract and providing that the same should expire on June 1, 1931, at which time plaintiff was to give peaceable possession of the premises; copy of modification or rescission contract was attached to answer and was shown to be upon, and a part of, the original lease contract. Certain goods valued at $84 were tendered to plaintiff.

The cross-petition alleged that plaintiff was indebted to defendant in the sum of $225 for rent which he refused to pay. The plaintiff filed his reply and answer setting up a general denial, and specific denial that plaintiff had entered into the rescission or modification agreement as pleaded by defendants, but admitting the execution thereof and alleging that plaintiff, at the time of making such purported rescission or modification agreement, was attempting to remove, as manager of such barber shop, one J. A. Armstrong, but was unsuccessful in such attempt. Plaintiff pleaded that such rescission contract was made between plaintiff and defendants for the purpose of showing the same to the said Armstrong so that he would relinquish his claims and surrender management of said barber shop, and that it was orally agreed at the time of executing the same that it should not be binding upon either of the parties thereto, and should never be enforced between them; subsequent thereto, it is alleged, the defendant W. B. Skirvin refused to carry out such agreement by failing to show said contract to the said Armstrong, and by reason thereof the consideration failed; said allegations being in the nature of admissions of the execution of such rescission or modification agreement together with a plea of avoidance. Thereafter an amended reply was filed, in which the allegations of the original reply were supplemented and elaborated upon; defendants replied to plaintiff's amendment to the petition, and the cause came on for trial on September 6, 1932, resulting in a judgment against the defendants.

One of the assignments of error of the defendants is that the district court erred in granting relief to a plaintiff where the contract or other act sought to be avoided is substantially a fraud on the rights or interests of third parties.

The rule stated in 9 C. J. p. 1220, is as follows:

"Relief is refused to plaintiff where the contract or other act sought to be avoided is substantially a fraud on the rights, interests, or intentions of third parties, as where he asks the court to aid him in consummating a breach of trust. The court will not aid a particeps criminis to an illegal transaction."

In 21 C. J. p. 182, from section 163, is the following:

"* * * This maxim expresses rather a principle of inaction than one of action. It means that equity refuses to lend its aid in any manner to one seeking its active interposition, who has been guilty of unlawful or inequitable conduct in the matter with relation to which he seeks relief."

And on page 186 of 21 C. J. we find:

"The unconscionable character of a transaction between the parties need not be pleaded by defendant. Whenever it is disclosed the court will of its own motion apply the maxim. It does not matter at what state of the proofs or in what order a lack of clean hands is discovered."

In 13 C. J. p. 492, sec. 440, it is said:

"No principle of law is better settled

than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out; nor can he set up a case in which he must necessarily disclose an illegal purpose as the groundwork of his claim. * * * The general rule is the same both at law and in equity, and whether the contract is executory or executed. * * * In such cases the defense of illegality prevails,. not as a protection to defendant, but as a disability in plaintiff. The court does not give effect to the contract, but merely refuses its aid to undo what the parties have already done."

One of the leading cases announcing this rule, cited in Corpus Juris, is Lyons v. Elston, 211 Mass. 478, 98 N. E. 93. In that case a decedent conveyed real estate to one of her two daughters, to the exclusion of a son, the conveyance having been obtained by undue influence of both daughters, the one, not the grantee, being a party thereto under the belief that her interests were being sufficiently protected. After the death of the grantor the grantee claimed sole title to the property and the other daughter joined the son in a suit to set aside the conveyance. The court held that a court of equity would not relieve the daughter who had been a party to the undue influence from the consequences of her own wrong.

In Barnes v. Starr, 64 Conn. 136, 28 Atl. 980, a leading case on this subject, the first paragraph of the syllabus is in substance: A man made an agreement with a woman, to whom he was engaged to be married, whereby in consideration of a certain sum, she was to release her dower rights in his estate. This agreement was made with the understanding that it was to be shown by him to his heirs, who were endeavoring to prevent the marriage, in order to induce them to cease their opposition, and then destroyed. He showed it to them and it accomplished its purpose, but instead of destroying it, he delivered it to his son-in-law, in whose possession it was found after his death. Held, that having been a party to the fraud practiced on her husband's heirs, she could not maintain an action to cancel the contract as obtained by fraud.

In Weegham v. Killefer, 215 Fed. 168 (aff. C. C. A. 215 Fed. 289), it was held that plaintiffs were not entitled to restrain a ball player from performing services under a contract made with defendant club where plaintiffs knew that such ball player had agreed to make the contract with the defendant club, but had induced him to make a contract with plaintiffs.

The district court, being a court of both law and equity, may take cognizance of such a situation, and may exercise its equity powers at any stage of the proceedings in an action of law.

In 15 C. J. 852, it is said:

"Courts are bound to take notice of the limits of their authority, and accordingly a court may of its own motion, even though the question is not raised by the pleadings or is not suggested by counsel, recognize the want of jurisdiction, and it is its duty to act accordingly by staying proceedings, dismissing the action, or otherwise noticing the defect, at any stage of the proceedings." Apache State Bank v. Voight, 61 Okla. 253, 161 P. 214.

In Danciger v. Stone, 187 Fed. 853, the United States Circuit Court for the Eastern District of Oklahoma announced the principle in syllabus No. 3 as follows:

"The maxim, 'He who comes into equity must come with clean hands,' expresses rather a principle of inaction than of action. and means that equity refuses to lend its aid to one seeking its active interposition who has been guilty of unlawful or inequitable conduct in the matter in relation to which he seeks relief."

The case at bar is an action for damages growing out of the alleged breach of a contract between plaintiff and defendant Skirvin Operating Company. As a defense the defendants pleaded that such contract had not been broken because it had been rescinded or modified by a later written contract. Plaintiff admitted that he executed such later contract, but in order to avoid the full force and effect of the same, contends that it was executed solely for the purpose of getting defendant Skirvin to assist him in removing his employee, Armstrong, as manager of said barber shop.

In Hunt v. W. T. Rawleigh Co., 71 Okla. 193, 176 P. 410, this court says:

"No court should lend its aid to a litigant who founds his cause of action upon an immoral or illegal act. If from the plaintiff's own statement or otherwise, the cause of action appears to arise ex turpi causa, or the transgression of a positive law of the country, state or federal. there the court should say he has no right to be assisted. It is upon that ground the court goes; not for the sake of the defendant, but because it will not lend its aid to such a plaintiff.

"It would be a travesty upon the law for the courts to lend their jurisdiction in the enforcement of the law to litigants whose contracts are in violation of law; likewise, in such cases, for the courts to be controlled in the exercise of their power in a given case to the particular state of the pleadings."

In the case of Hunt v. W. T. Rawleigh Co., supra, this court states most emphatically that it is not necessary that the illegality of a contract be raised in the pleadings, but that the court will refuse to render assistance to any party in any stage of the proceedings in which such illegality or immorality appears. In that case the court instructed the jury on the question of the illegality of the contract, and this court reversed the cause on the grounds that the court should not have submitted the case to a jury.

We deem it unnecessary to engage in a discussion of the other contentions of the parties, as they are immaterial to a correct decision in this case.

In an action for damages for breach of a contract, where plaintiff, in order to recover, must overcome upon equitable grounds a written modification of said contract, executed by plaintiff, and where plaintiff admits inequitable or immoral conduct on his part in entering into said contract, in that it was executed solely for the purpose of deceiving a third person and inducing him to relinquish certain claimed rights, relief will be denied to such plaintiff.

Judgment reversed, with directions to the trial court to dismiss.

OSBORN, C. J., BAYLESS, V. C. J., and WELCH, PHELPS, GIBSON, and DAVISON, JJ., concur. RILEY and HURST, JJ., dissent.