WICKHAM et al. v. SIMPLER et al.

No. 32105. Dec. 17, 1946.

Rehearing Denied Feb. 25, 1947.

Second Petition for Rehearing Denied May 13, 1947.

*180 P. 2d 171.*

·J. Scott Vincent, of ·Cheyenne, and Lawrence Jones and Fletcher M. Johnson, both of Bristow, for plaintiffs in error.

A. J. Welch, of Clinton, for defendants in error.

· BAYLESS, J. This appeal by Julia A. Wickham et al. from a judgment of the district court of Roger Mills county in favor of Lula V. Simpler et al. involved the correctness of said judgment, which is attacked on many grounds. The transaction covers many years time, during which many of those actively participating in the inception of the matter are now dead, and this action is between their heirs and successors in interest.

(1) Several thousands of acres of land are involved. Prior to October 27, 1926, John Simpler and Lula V. Simpler owned this land. About that date they sold the land to W. F. Wickham. The land was then encumbered by mortgage indebtedness, the exact amount of which is in dispute. Wickham gave notes and a mortgage for about $15,000, secured by a mortgage on the land, as part of the purchase price.

(2) The notes and mortgage given by Wickham were made payable to P. H. Body, a friend of John Simpler, for the purpose of placing the debt represented thereby beyond the reach of Simpler's creditors. In 1928, Body brought suit against Wickham on the notes and to foreclose the mortgage. Wickham defended on the ground that Body was not the owner and holder of the instruments sued on, alleging that Body had assigned them to Simpler, who in turn had assigned them to one Curry. Issue was joined with respect to who owned the instruments sued on and whether there was default in payment of interest as alleged. Judgment was rendered against Wickham by default, and he, being unable to get this judgment set aside, 'appealed.

(3) The truth concerning the following facts is in serious doubt, each side explaining its view and contradicting the other. In any event, the appeal to this court was dismissed. Wickham gave Simpler a check for $150 with a notation thereon that it was part payment on a $12,000 Body judgment, and on December 5, 1930, Simpler died in Sedgwick county, Kan. Why there was a settlement between Wickham and Simpler is not clear, the circumstances under which the dismissal of the appeal and release of judgment were executed are uncertain, but Simpler's attorney, who has at one time or another represented both sides of this entire transaction, knows more about it than anyone, and participated in the execution of these papers, and testified as a witness in the trial of this action, says it was for the protection of Simpler against his creditors. He stated that, although he may have at times represented to others, as a matter of policy to protect Simplers, that Body was the owner of the notes and mortgage given by Wickham, actually Body was not the owner, that Simplers were. Body testified he was not the owner, but held it for Simpler.

(4) After Simpler's death, an assignment of the mortgage given to Body was recorded, naming Floyd Simpler assignee. Thereafter, Floyd Simpler released the mortgage of record and filed a satisfaction of the judgment. The attorney above referred to, now and then representing Simplers, signed the satisfaction of judgment.

(5) Wickham and Floyd Simpler then entered into a written agreement, the purport of which was that Wickham

admitted an indebtedness to Floyd Simpler of $12,000, and provided for the payment thereof. Wickham made some payments on this debt to Floyd Simpler, and in 1933 Lula V. Simpler, as administratrix of the estate of John Simpler, and her other children complained to Wickham that Floyd Simpler was not making equitable division with them of the money Wickham had paid him. These parties met and adjusted these issues satisfactorily to themselves. Lula V. Simpler received title to real estate in Stroud, Okla., and Wickham thereafter made payments on the $12,000 judgment to her as administratrix.

(6) Thereafter, a creditor brought an action in the district court of Oklahoma county alleging many of the facts heretofore recited, and charging that John Simpler and Lula V. Simpler, during John's lifetime, and Lula V. Simpler and children following his death, concealed the debt from Wickham for the purpose of defrauding creditors, and charged specifically, and it seems to be admitted, that Lula V. Simpler, as administratrix, did not list this debt as an asset of the estate of John. Simpler, deceased. A second action of the same purport was filed by a man acting as administrator of the estate of John Simpler, deceased, in Oklahoma county. The allegations were substantially the same, in effect, in each case. The Wickhams were parties to each. The record conclusively shows that Wickhams and Simplers both hired the lawyer above referred to to defend these actions, and Wickham paid the fee and took credit on what he owed Simplers. For the purposes of this decision and to show Simplers' attitude toward the creditors of the decedent, we quote letters which this attorney wrote dealing with the issues in the two actions. A letter from this attorney to Wickham dated December 18, 1933, reads in part:

"You remember that you were impressed with the theory that your dealings with Floyd afforded you a particular protection. You remember that I was not satisfied with that position when you mentioned it. I am now in a position to advise you somewhat definitely upon that point. Of course I want you to remain friendly with Floyd as far as possible, and I want you to get your hands on such of these papers, if you do not already have them, as were executed by Mr. Body to Floyd wherein the judgment was supposed to have been assigned to Floyd and send them to me. I either want the originals or I want copies of them.

"I am compelled to advise you to take an entirely different attitude as to whom you transacted business and made payments to the Simplers, that is, when you are compelled to say anything at all about it. I want every transaction that you had and every payment that you made to be treated as a payment to Mrs. Simpler, as executrix of the estate of John Simpler, so that when we are forced to that particular proposition we can make it appear that your payments were made to the proper person and you can then get credit for all the payments you made. Then, as to what she did with the money and how she disposed of the payments which you made, it will be up to her to explain and to account for. Even though you made some payments direct to Floyd himself, and transacted business with Floyd himself, I want it understood that you were doing so because he was the agent of his mother, the administratrix, and the transactions and payments by you were with the administratrix as a matter of fact, even though they were made through Floyd as her agent. That will put the burden upon the creditors to deal with her as the administratrix, and if her bond is no good and she has spent the money, then it will leave the creditors holding the bag."

A letter to Lula V. Simpler dated February 17, 1934, reads in part:

"With reference to Mr. Wickham, I want to state to you one fact which I assume that you already know, namely, that it is certainly to your interest, to the interest of the heirs of John Simpler, that you stand unconditionally in perfect good faith with Mr. Wickham. You know as well as I do that there are several judgments against the John Simpler estate, and while I am writing you this letter for your own good but *privately, you know that whatever Mr. Wickham owed he owed to the John Simpler estate.* Mr. Wickham and I have

always been in sympathy with you and the other heirs of John Simpler. We have no sympathy for the persons who own those judgments and who are trying to collect them, but you might as well know at this time and we might as well be plain about it, that whatever judgment those parties may be able to collect from any of you, just that much the amount due to the heirs of John Simpler will be reduced.

"I might further state to you that I am in sympathy with justice and law, and justice and the law would give to each of John Simpler's children an equal amount. The daughter is entitled to as much as any other child, yet we know that Floyd has been getting the best of the deal for some time. Floyd has no papers and no information that will be worth a dime to the defense of this case, and this method of his trying to *hold up Mr. Wickham for a few hundred dollars at a time, from time to time, is just that much injustice to yourself and the balance of your children.*

"Now we are going to try to handle this matter for your benefit; that is, for the benefit of yourself and your children, but not the' *detriment and double taxation against Mr. Wickham.* Therefore, Mr. Wickham is not going to pay another dollar on his indebtedness until these matters are settled, and he is then going to pay what he owes and he is going to pay it where the law requires it to be paid. This ought to be sufficient warning to you that the more you protect Mr. Wickham in this case, or in any other case that might be filed against him, the more you are protecting yourself."

Another letter written by this attorney to Lula V. Simpler, after a settlement of these cases had been concluded, reads in part:

"I received your letter a few days ago with reference to the Simpler Estate, telling me that Mr. Wickham had been over to see you. Your letter, as usual, was brimmed-full of insinuations, sarcasm and criticism, rather than expressions of appreciation.

"In the first place, no one has filed a claim against the estate without a perfect legal authority for doing so,

and it is not your fault, nor mine, nor Mr. Wickham's that the Simpler Estate was indebted to these various creditors.

"Mr. Wickham owed the estate some money, but it was no more his duty to pay the expenses for fighting the claims against the Simpler Estate than it would be his duty to pay the expenses for fighting claims against the Estate of George Washington, the Father of our Country. The mere fact that he owed the estate did not mean that he should pay what he owed and then pay the expenses to fight creditors of the estate. *What he has done has been a voluntarily, friendly act upon his part to do you a kindness, to help you and your family to get the money instead of paying it to the creditors. He could have admitted the indebtedness and turned the amount which he owed over to the court for distribution and thereby saved himself of even $1.00 worth of expense in the way of time, or gasoline, on any and all expenses whatsoever, but he tried to render you a favor and has paid considerable expense to my knowledge in trying to favor you, all of which he was not required to do.*

"I notice your reference to settlement of these claims where you talk about "buying off" this, that and the other person. I want to tell you again, once and forever, that I do not deal in that kind of business. I neither buy nor sell in the manner referred to by you. And in the Harris case nobody was bought off. *I was simply able as a lawyer to whip that bunch down to the point that they had no confidence in their case, and when that happened we made a legal settlement by paying them $600.00 in full satisfaction of the claim which amounted to $5500.00 at that time.* Before they were in an attitude of making this settlement I practically defeated them in three different suits that they had filed.

*"Now, if you feel that you could be more successful in handling these claims, which you know are legal claims against the estate, then I would like for you to enter upon the job.* Make a bid and see who you can buy, and how much money they will cost you, and see how far you get with such tactics.

"Mr.' Wickham was the only man who was in danger in this whole deal. He paid to you and some other members of your family considerable money without any protection or legal right to do so, but from now on, as long as I am connected with the case, it will be a part of my duty and my purpose to see that he does not further jeopardize himself in this controversy. I do not mean to say that Mr. Wickham need not pay all that he owed the Simpler Estate, but both you and I agree that he should not pay that amount but one time."

What has been recited to this point sufficiently demonstrates the evidence of Simplers' inequitable conduct, with the knowledge and connivance of Wickham and the attorney, and justifies us applying the rule urged by defendants, that plaintiffs did not come into court with clean hands, and, being guilty of inequitable conduct, cannot have relief from the courts.

Following all of the above, the Simplers began the present action by filing a petition seeking judgment against Wickham's estate, his wife, and sons, for money judgment on the original notes and mortgage, less certain credits, alleging, in effect, that all of the transactions above outlined were done by Simplers at the instigation of Wickham following a scheme concocted by him whereby he could confuse and misadvise Simplers and eventually defraud them of their debt. The issues raised brought out in the evidence a great volume of conflicting evidence as well as much evidence that cannot be said to have been controverted. The Wickhams claim to have paid the indebtedness in full, but failed to produce satisfactory proof of full payment.

The issues were both legal and equitable, but the equitable issues predominated. The Simplers were not entitled to prevail by obtaining judgment on the notes and foreclosing the mortgage unless they could induce the trial court to find and hold that the satisfaction of the earlier judgment and release of the mortgage were without ef-

fect and should be set aside. The question of whether an action is legal or equitable is to be determined by the pleadings, and the rights and remedies of the parties. Where the action is primarily to vacate or evade the effect of previous acts or conduct on the ground they were induced by fraud, the action is equitable in its nature, and the issue relating to the money judgment is incidental. Mid-Continent Life Ins. Co. v. Sharrock, 162 Okla. 127, 20 P. 2d 154, and the cases cited therein. See also, Moschos v. Bayless, 126 Okla. 25, 258 P. 263. Therefore, if it was necessary for Simplers to have relief against their prior conduct and to offset the period of time that had run as a condition to prosecuting the present action and we think it was necessary, the action is equitable in nature.

We think it is clear that John Simpler, in his lifetime, and his heirs since, in co-operation with Wickham, have concealed the existence of the debt owing from Wickham to them for the purpose of preventing creditors of John Simpler from learning thereof and applying it to the satisfaction of their claims against his estate.

That such conduct is inequitable is elementary. Rust v. Gillespie, 90 Okla. 59, 216 P. 480; 19 Am. Jur. 323, et seq. A court equity will not adjust differences between wrongdoers. 19 Am. Jur. supra, p. 325. In short, as we said in Rust v. Gillespie, supra.

"Equity will not lend its aid in any manner to one who has been guilty of unlawful or inequitable conduct in a transaction from which he seeks relief, nor to one who has been a participant in a transaction the purpose of which was to defraud . . . creditors . . ."

See, also, Skirvin v. Sigler, 183 Okla. 523, 83 P. 2d 530, where conduct designed to deceive a third person was condemned as inequitable and the rule applied to deny relief. This rule is applied even though the opposing party is in pari delicto, and carries through to heirs, Rust v. Gillespie, supra.

There is no occasion to consider the other issues nor the evidence thereon. Our decision on this issue disposes of the case contrary to Simplers.

The judgment appealed from is reversed and the cause is remanded, with directions to dismiss plaintiffs' cause of action.

GIBSON, C. J., HURST, V. C. J., and OSBORN, CORN, and DAVISON, JJ., concur., WELCH, J., dissents.